QUINTON v GENERAL MOTORS CORPORATION

Docket No. 100787. Argued April 10, 1996 (Calendar No. 1). Decided
July 30, 1996. Rehearing denied *post*, 1205.

Harry L. Quinton was awarded worker's compensation in 1976 for dis-
abilities caused by his employment with General Motors Corpora-
tion. Pursuant to 1981 PA 203, § 354, in April and July 1982, Gen-
eral Motors notified the plaintiff that his benefits would be reduced
by the amount of certain pension and retirement payments, effec-
tive March 31, 1982. Both parties appealed. A hearing referee
directed General Motors to restore full weekly benefits, stating that
§ 354 could not be applied retroactively. The Worker's Compensa-
tion Appeal Board affirmed. The Court of Appeals, GRIBBS, P.J., and
BRENNAN and HOOD, JJ., denied leave to appeal (Docket No. 74328).
The Michigan Supreme Court held the case in abeyance, pending
decision in *Franks v White Pine Copper Div*, 422 Mich 636 (1985),
which subsequently held that § 354 was intended to apply retroac-
tively. Thereafter the Supreme Court reversed the judgment of the
WCAB and remanded the case to the WCAB for entry of a judgment
consistent with *Franks*. On remand, the board ruled in May 1986
that the benefits were subject to coordination under § 354, begin-
ning March 31, 1982.

Thereafter, 1987 PA 28 amended § 354, specifically declaring
*Franks*, to be erroneous and directing that there be no coordina-
tion for persons like the plaintiff whose injury occurred before
March 31, 1982. The act was upheld in *Romein v General Motors
Corp*, 436 Mich 515 (1990), but, because *Romein* was appealed to
the United States Supreme Court, the Michigan Supreme Court
stayed the enforcement of MCL 418.354(17)-(20); MSA
17.237(354)(17)-(20).

After the United States Supreme Court affirmed *Romein*, 503 US
181 (1992), the Michigan Supreme Court vacated the stay and
directed that the statute be enforced. A magistrate ordered General
Motors to repay with interest all past coordinated benefits and not
to coordinate any future weekly benefits. In January 1994, the
Worker's Compensation Appellate Commission reversed, noting
that *Romein* held that § 354 cannot be applied to the parties in this
matter because the right to coordinate was entered as a final judg-
ment in 1986, before the effective date of the amendments. The

Court of Appeals, Weaver, P.J., and MacKenzie and Sawyer, JJ., denied leave to appeal (Docket No. 172640). The plaintiffs appeal.

In separate opinions, the Supreme Court *held:*

The plaintiff's benefits should not be coordinated.

Justice Levin stated that 1987 PA 28 is applicable to the weekly benefits of all workers injured before March 31, 1982, without regard to whether there was a prior adjudication in, or pursuant to, *Franks.*

The doctrine of separation of powers stands for the proposition that the Legislature may not frustrate the decisions of the judiciary by subjecting it to revision, suspension, modification, or other review by the executive or legislative branches. The doctrine precludes the Legislature from reversing or setting aside a judgment entered by a court. Nor may the Legislature declare by retroactive legislation that the law applicable to a particular case was something other than what the courts said it was.

. Because the WCAB is not a court, but an administrative tribunal, there is no separation of powers issue with respect to those workers whose cases were pending before it when *Franks* was decided and whose cases were dismissed or resolved on the initiative of the WCAB on the basis of *Franks.* Simply because an administrative tribunal cites a rule of law or other precedent established by a court does not convert its order into an order of the court. Following *Franks,* however, orders were entered in *Quinton* and thirty-nine other cases, remanding them to the WCAB for entry of a judgment consistent with *Franks.* Although the operative order reducing benefits was entered by the WCAB, rather than by a court, the WCAB acted at the express direction of the Supreme Court, and, for separation of powers analysis, those orders should be deemed to be orders entered by a court.

1987 PA 28, amending § 354, did not require the reopening or setting aside of any order entered by the WCAB pursuant to *Franks;* rather, the order entered pursuant to this Court's directive was implemented, not reopened or set aside. Because with regard to periods before the May 14, 1987, effective date of 1987 PA 28, the 1987 legislation does not require a reopening or setting aside of the 1986 WCAB orders, and, rather, operates independently, it does not violate the doctrine of separation of powers concerning periods before its effective date. 1987 PA 28 simply requires payment to all in Quinton's class of an uncoordinated benefit from and after March 31, 1982; it does not implicate the doctrine of separation of powers because it modifies the operative effect of *Franks* retroactively.

Worker's compensation provides a system of income mainte-
nance, and, partially in recognition of this, it has been held to be
subject to modification both prospectively and retrospectively in
response to changes in law and fact. Unlike awards in other areas
of the law, an award of worker's compensation is never final, and
cannot be accorded the conclusive effect of res judicata. Such an
award may be retroactively increased, decreased, or modified legis-
latively with respect to coordination or otherwise at any time, but,
because it is always subject to change, it cannot be a final judg-
ment for separation of powers purposes.

A change in an award is distinguishable from a change in a deter-
mination of eligibility or work-relatedness. The effect of 1987 PA 28
is not to send the case back for a new order on the basis of the
merits. Rather than modifying an existing order, the legislation
more properly may be seen as providing a new benefit. The Legisla-
ture may pursue by rational means any legitimate purpose, includ-
ing providing an economic benefit to a class of persons that it con-
siders deserving, even if a court has ruled otherwise.

A properly enacted statute is binding law except to the extent
that it violates the United States or the Michigan Constitution. As
an equal branch of government, the judiciary must enforce the
enactments of the Legislature to the extent permitted by the consti-
tution. In this case, Quinton, having suffered a disabling injury
before 1982, was among the class of applicants that the Legislature,
through 1987 PA 28, intended would enjoy uncoordinated benefits.
Because 1987 PA 28 does not violate either the United States or the
Michigan Constitution, the plaintiff is entitled to receive benefits
improperly coordinated.

Justice BOYLE, joined by Justice MALLETT, concurring, stated that
the equities in this case compel awarding uncoordinated benefits.

While, under the doctrine of res judicata, claims that were or
could have been reduced to final judgment are barred from being
brought a second time, in some cases, there may be matters of pub-
lic policy so extraordinary as to justify a departure from res judi-
cata principles. Although the doctrine of res judicata is applicable
in worker's compensation proceedings, it is not always a bar to
modifications of worker's compensation awards where there had
been a subsequent change in the law. The doctrine applies to rul-
ings regarding both eligibility and the amount of benefits.

The Supreme Court has the authority to remedy the inequitable
results in this case by declining to enforce the judge-made rule of
res judicata under these extraordinary circumstances. On the mer-
its of plaintiff's renewed claim, separation of powers is not violated
by this result.

Justice CAVANAGH, concurring, stated that the 1986 order of the WCAB was final with respect to accrued benefits subject to the order. Prospective benefits, accruing after the 1986 order, however, would not be final because there are no vested rights in the amount of liability established at the time of an injury. Thus, this employer had a vested right to coordinate benefits for that period subject to the remand order and should be allowed to do so for that period. Nevertheless, the equitable considerations justify setting aside the orders and precluding coordination. It would be unfair to penalize employees who vigorously pursued their rights, while rewarding those similarly situated employees who did not. Coordination of benefits for employees injured before March 31, 1982, should be precluded.

Reversed and remanded.

Justice RILEY, joined by Chief Justice BRICKLEY, dissenting, stated that although *Romein* clearly held that workers have no vested rights in the finality of coordinated benefits paid, implicit in the Court's holding is that rights do vest for purposes of due process when judgments are entered by the WCAB at the direction of an appellate court pursuant to former law. Such a judgment exception protects the vested rights that form in reliance on an award at the moment it is reduced to a final judgment. The employer has a greater expectation of finality after litigation and decision by the appellate courts. A decision of the WCAB is less immune to a change in the law than the appellate courts. Accordingly, this forms the basis on which the constitutionality of 1987 PA 28 was conditioned in *Romein*. When the Supreme Court previously remanded this case for entry of a judgment consistent with *Franks*, General Motors obtained a final judgment within the purview of *Romein*, and the award was then immune from subsequent legislative modification. Thus, the decision of the WCAB allowing coordination of Quinton's benefits through the effective date of 1987 PA 28 should be upheld.

Justice WEAVER took no part in the decision of this case.

*Levine, Benjamin, Tushman, Bratt, Jerris & Stein, P.C.,* and *Sachs, Waldman, O'Hare, Helveston, Bogas & McIntosh, P.C.* (by *Theodore Sachs* and *Granner S. Ries*), for the plaintiffs.

*Conklin, Benham, Ducey, Listman & Chuhran, P.C.* (by *Martin L. Critchell*), for the defendants.

Amici Curiae:

*Jordan Rossen, Ralph O. Jones,* and *Charles M. Gayney* for International Union, United Automobile, Aerospace & Agricultural Implement Workers of America-UAW.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Morrison Zack,* Assistant Attorney General, for Bureau of Worker's Disability Compensation.

LEVIN, J. Following this Court's decision in *Franks v White Pine Copper Div,* 422 Mich 636, 649-658; 375 NW2d 715 (1985), the Worker's Compensation Appeal Board in 1986 ruled, pursuant to *Franks,* that the weekly benefits owed to plaintiffs' decedent were subject to coordination pursuant to § 354 of the Worker's Disability Compensation Act,[1] commencing March 31, 1982.

The question presented is whether the doctrine of separation of powers precludes, with respect to workers whose weekly benefits were held to be subject to coordination in, or pursuant to, *Franks,* application of the 1987 legislation providing that *Franks* was erroneously decided and that the legislative intention was not to coordinate respecting personal injuries occurring before March 31, 1982. A majority holds that the 1987 legislation is applicable to the weekly benefits of all workers injured before March 31, 1982, without regard to whether there was a prior adjudication in, or pursuant to, *Franks.*

---

[1] MCL 418.354; MSA 17.237(354).

I

Harry L. Quinton was born in 1915. He worked for General Motors Corporation until July, 1974. After his last day of work at General Motors, he filed a petition for hearing, alleging that his employment had caused disabling silicosis and emphysema. A 1976 decision of a hearing referee provided an open award of benefits, requiring General Motors to pay weekly benefits until further order of the Bureau of Worker's Disability Compensation. The referee's decision was not appealed.

1981 PA 203 added § 354 of the Worker's Disability Compensation Act.[2] As explained in *Franks*, this section directs that worker's compensation benefits be reduced by the amount of certain pension and retirement payments that an injured employee may be receiving. The effective date was March 31, 1982.

In April, 1982, and again in July, 1982, General Motors notified Quinton that his benefits would be reduced under § 354, reflecting a coordination of his after-tax pension benefit.[3]

Quinton filed a May, 1982, petition for hearing, and General Motors filed a July, 1982, notice of dispute. The referee's decision directed General Motors to restore Quinton's full weekly benefits, saying that § 354 "may not be applied retroactively."

---

[2] MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*

[3] General Motors also told him that he had been "overpaid" $892.36 in worker's compensation since March 31, 1982, and that he should make arrangements to reimburse this amount.

The WCAB affirmed in 1983.[4] The Court of Appeals denied leave to appeal. This Court held this case in abeyance pending a decision in *Franks*.[5]

*Franks* was decided in October, 1985. This Court held that § 354 was intended to apply retroactively, and thus "an employer may reduce the amount of workers' compensation benefits payable after March 31, 1982, for periods of disability *after* that date, by deducting other employer-financed benefits as provided in § 354 . . . ."[6]

This Court then reversed the judgment of the WCAB in this case, and remanded to the WCAB "for entry of a judgment consistent with our decision in [*Franks*]."[7]

On remand, a two-member panel of the WCAB ruled in May, 1986, that Quinton's benefits were subject to coordination under § 354 "effective March 31, 1982, and thereafter," pursuant to *Franks*.[8]

---

[4] The panel issued three separate opinions, reflecting a split with regard to whether General Motors should be assessed a penalty under MCL 418.801; MSA 17.237(801). That dispute is no longer part of this case.

[5] Unpublished order entered October 24, 1984 (Docket No. 73450). *Chambers* and *Gomez v General Motors Corp* were resolved in *Franks*.

[6] We hold that the provisions of § 354 of 1981 PA 203; MCL 418.354; MSA 17.237(354), may be applied to offset workers' compensation liability to workers injured prior to the effective date of that section, and that an employer may reduce the amount of workers' compensation benefits payable after March 31, 1982, for periods of disability *after* that date, by deducting other employer-financed benefits as provided in § 354(1)(a)-(e) which are being received by the injured employee and are attributable to the same compensable periods *after* March 31, 1982.

We also hold that an employer is not required to petition and prevail at an evidentiary hearing before it is entitled to coordinate benefits under § 354, but that, instead, the reporting and informational provisions of § 354(10) and the employee's right to seek a hearing in the event of dispute will govern. [422 Mich 664 (emphasis in original).]

[7] 424 Mich 884 (1986).

[8] 1987 PA 28.

The Legislature quickly responded. 1987 PA 28 amended § 354, indicating its disagreement with the decision of this Court in *Franks*.[9] The Legislature directed in amended subsections 354(17)-(20) that

---

[9] Section 354(17)-(20) provides:

(17) The decision of the Michigan Supreme Court in *Franks v White Pine Copper Division*, 422 Mich 636 (1985) is declared to have been erroneously rendered insofar as it interprets this section, it having been and being the legislative intention not to coordinate payments under this section resulting from liability pursuant to section 351, 361, or 835 for personal injuries occurring before March 31, 1982. It is the purpose of this amendatory act to so affirm. This remedial and curative amendment shall be liberally construed to effectuate this purpose.

(18) This section applies only to payments resulting from liability pursuant to section 351, 361, or 835 for personal injuries occurring on or after March 31, 1982. Any payments made to an employee resulting from liability pursuant to section 351, 361, or 835 for a personal injury occurring before March 31, 1982 that have not been coordinated under this section as of the effective date of this subsection shall not be coordinated, shall not be considered to have created an overpayment of compensation benefits, and shall not be subject to reimbursement to the employer or carrier.

(19) Notwithstanding any other section of this act, any payments made to an employee resulting from liability pursuant to section 351, 361, or 835 for a personal injury occurring before March 31, 1982 that have been coordinated before the effective date of this subsection shall be *considered to be an underpayment of compensation benefits,* and the amounts withheld pursuant to coordination shall be reimbursed with interest, within 60 days of the effective date of this subsection, to the employee by the employer or carrier.

(20) Notwithstanding any other section of this act, any employee who has paid an employer or carrier money alleged by the employer or carrier to be owed the employer or carrier because that employee's benefits had not been coordinated under this section and whose date of personal injury was before March 31, 1982 shall be reimbursed with interest, within 60 days of the effective date of this subsection, that money by the employer or carrier. [MCL 418.354(17)-(20); MSA 17.237(354)(17)-(20), as amended by 1987 PA 28 (emphasis added).]

there be no coordination for persons like the plaintiff, whose injury was before March 31, 1982.[10]

Subsections 354(17)-(20) were challenged in this Court, but the legislation was found to be constitutional. *Romein v General Motors Corp*, 436 Mich 515; 462 NW2d 555 (1990).[11]

Because *Romein* was being appealed to the United States Supreme Court, this Court stayed enforcement of subsections 354(17)-(20).[12] After the United States Supreme Court affirmed *Romein* in March, 1992, this Court vacated the stay and directed that the statute be enforced.[13]

A lawyer representing Quinton wrote, in April, 1992, to General Motors, seeking repayment of all coordinated benefits, plus interest. When the money was not paid, the lawyer requested a hearing. A magistrate ordered General Motors to "repay with interest all past coordinated benefits," and directed that General Motors "shall not coordinate any future weekly Workers' Compensation benefits." The magistrate said that he was bound by the Legislature's action, and by

---

[10] General Motors filed with the Bureau of Worker's Disability Compensation in December, 1989, a notice that it was stopping Quinton's benefits because he had died on October 31, 1989. General Motors nevertheless apparently continued making payments.

[11] Reh den 437 Mich 1202 (1990), aff'd 503 US 181; 112 S Ct 1105; 117 L Ed 2d 328 (1992).

[12] Unreported order entered December 27, 1990 (Docket Nos. 83830, 83831).

[13] On order of the Court, the Court having received the mandate of the United States Supreme Court, the stay entered by this Court's order of December 27, 1990 is hereby vacated. Subsections 354(17)-(20) of 1987 PA 28, MCL 418.354(17)-(20) are now enforceable according to their terms, including payment pursuant to subsection 354(19) within 60 days after the date of this order. [Unreported order entered April 13, 1992 (Docket Nos. 83830, 83831).]

the April, 1992, enforcement order that this Court entered following *Romein.*

General Motors again appealed. In January, 1994, the Worker's Compensation Appellate Commission reversed the decision of the magistrate. It noted this Court's statement in *Romein* that § 354 "may validly be applied to all compensation liabilities within its terms *except those which have been reduced to final judgment before its enactment.*"[14] The WCAC refererenced this Court's further explanation: .

> We hold, therefore, that 1987 PA 28 is constitutional even though it applies to benefits due and payable for a period before the effective date of the statute. We hold further that only judgments entered under former law are immune from this legislative modification. This limitation protects the vested rights that form in reliance on an award at the moment it is reduced to a final judgment. [436 Mich 533.]

The WCAC said that this "clear and unequivocal" holding of *Romein* meant that 1987 PA 28 "cannot be applied to the parties in this matter, because the right to coordinate was entered as a final judgment in 1986, before the effective date of the amendments."[15]

The Court of Appeals, in denying leave to appeal, stated:

> The Court orders that the application for leave to appeal is denied for lack of merit in the grounds presented in light of the final judgment entered by the Worker's Compensation Appeal Board on May 28, 1986, pursuant to the

---

[14] 436 Mich 521 (emphasis supplied).

[15] 1994 WCACO 113, 114.

The WCAC rejected the plaintiff's suggestion that an open award granting benefits " 'until further order of the Bureau' " could not, because of the possibility of future change, be a final judgment. 1994 WCACO 115.

Supreme Court's direction in *Quinton v General Motors Corp*, 424 Mich 884 (1986).

The plaintiffs applied to this Court for leave to appeal.[16]

II

In *Romein*, this Court held that 1987 PA 28 was a constitutional exercise of the Legislature's authority. By enacting subsections 354(17)-(20), the Legislature established that persons injured before March 31, 1982, are not subject to the coordination requirements of § 354.

This Court said, however, in *Romein* that the provisions of subsections 354(17)-(20) do not apply where the rights of the parties were reduced to final judgment before the effective date of 1987 PA 28:

> The employers' right to coordinate benefits as provided by statute in 1982 was repealed by 1987 PA 28 through a constitutional exercise of legislative authority to regulate social and economic life. We hold that 1987 PA 28 does not violate the Due Process Clauses of the state and federal constitutions, the Contract Clause of the federal constitution, or the *Separation of Powers Clause of the Michigan Constitution, so long as it is not applied to impair coordination rights that were reduced to final judgment before its effective date.* [436 Mich 539-540 (emphasis added).]

---

[16] The application was filed in Quinton's name. General Motors filed a motion to dismiss on the ground that Quinton died on October 31, 1989. See n 10. In this connection, the parties also argue about a September, 1992, request for hearing, which bears Quinton's purported signature. The lawyer who filed the application had moved to substitute Quinton's coexecutors as plaintiffs. Because this matter began with a 1974 petition (not with the 1992 request for hearing, as urged by General Motors), and because General Motors has known for almost six years of Quinton's death, we have altered the caption of this case to reflect the substitution of the coexecutors. The motion to dismiss is denied; the motion to substitute parties is granted.

This Court declared this exception for final judgments because, at the time, we were concerned that a broader order permitting all qualifying claimants to recover improperly coordinated benefits, regardless of the extent to which they had litigated their claims, might run afoul of either the Michigan or federal constitution. This Court's statement was, however, dicta. *Romein* and its companion case, *Gonzalez*, were on direct appeal; their cases had not, as had Quinton's case, been dismissed pursuant to *Franks* in an order that had become final before the enactment of the 1987 legislation.

It is well settled that issues neither briefed nor argued cannot be definitively decided, and that the Court's pronouncements, especially dicta, without briefing and argument, are not stare decisis.[17] I therefore turn to the Michigan and United States Constitutions to consider what potential barriers to recovery Quinton's claim presents that were absent in *Romein*.

                        III

As most know from their early American history lessons, this country's founders and the authors of the Constitution of the United States of America established a tripartite system of government. The three branches, executive, judiciary, and legislative, are to remain separate and independent.

Of particular relevance to this case, the doctrine of separation of powers has been said by text writers to stand for the proposition that the Legislature may not frustrate the decisions of the judiciary by subjecting

---

[17] This Court stated in *Romein, supra* at 539, n 22, "We do not address the question of how and to what extent the principles of finality are implicated."

them to "revision, suspension, modification, or other review by the executive or legislative branches."[18] The United States Supreme Court early intimated:

> It is not within the power of a legislature to take away rights which have been once vested by a judgment. Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases.[19]

The doctrine of separation of powers is expressly set forth in the Michigan Constitution:

> The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution. [Const 1963, art 3, § 2.]

As in the federal system, this doctrine has been said to preclude the Legislature from reversing[20] or setting aside[21] a judgment entered by a court. *Wylie v Grand Rapids City Comm*, 293 Mich 571, 582-583; 292 NW 668 (1940).

While the accuracy of the foregoing statements concerning the power of a legislature to overrule a decision of a court, as expressed by this one Court of justice or the United States Supreme Court continues to go unchallenged in its most general sense, it has been noted by more than one constitutional scholar

---

[18] See 1 Rotunda & Nowak, Constitutional Law (2d ed), § 2.13(e), p 192; and Nowak & Rotunda, Constitutional Law (4th ed), § 2.12(e), p 69.

[19] *McCullough v Virginia*, 172 US 102, 123-124; 19 S Ct 134; 43 L Ed 382 (1898). See also *Hayburn's Case*, 2 US (2 Dall) 408; 1 L Ed 436 (1792).

[20] *Moser v White*, 29 Mich 59, 60 (1874).

[21] *Butler v Saginaw Co Bd of Supervisors*, 26 Mich 21, 27 (1872).

that "[t]he source and contours of th[e] separation-of-powers limitation are somewhat murky . . . ."[22] I take guidance from the recent decision of the United States Supreme Court in *Plaut v Spendthrift Farm, Inc*, 514 US 211; 115 S Ct 1447; 131 L Ed 2d 328 (1995).

A

In *Plaut*, purchasers of stock shares of a corporation brought an action against the corporation and other defendants, alleging violations of subsection 10(b) of the Securities Exchange Act.[23] At the time, because subsection 10(b) did not contain an express provision concerning the length of the applicable period of limitation, there were questions concerning what limitation period would be accorded Plaut and other plaintiffs who filed similar actions.

The issue was settled finally by the United States Supreme Court in *Lampf, Pleva, Lipkind, Prupis & Petigrow v Gilbertson*, 501 US 350; 111 S Ct 2773; 115 L Ed 2d 321 (1991). The Court ruled that a uniform statute of limitations was to apply, which mandated that actions be brought within three years from the time the event constituting the violation took place or within one year after the discovery of the violation. As a result of *Lampf*, Plaut's complaint was dismissed as untimely by a United States district court. Plaut did not appeal the dismissal.

In response to *Lampf*, Congress amended the Securities Exchange Act by adding § 27A.[24] Section

---

[22] Redish, Federal judicial independence: Constitutional and political perspectives, 46 Mercer L R 697, 713 (1995).

[23] 15 USC 78j(b).

[24] 15 USC 78aa-1.

27A allowed the reinstatement of any complaint alleging a violation of subsection 10(b) that was filed before June 20, 1991, the date *Lampf* was decided, provided that the complaint would have been timely under the local laws applicable to the particular jurisdiction.[25] *Plaut* found § 27A to be unconstitutional as violative of the doctrine of separation of powers because it required the reopening and setting aside of final judgments entered by federal courts.

Although this Court is not bound by Justice Scalia's analysis for the Court in *Plaut*, where, as here, state separation of powers concerns are implicated, we acknowledge the weight a decision of the highest court in the land carries. Because I find Justice Scalia's reasoning historically compelling, logically persuasive, and consistent with Michigan separation of powers jurisprudence, I adopt his analysis to the extent it is applicable to the facts in this case.

---

[25] Section 27A provided:

(a) Effect on pending causes of action

The limitation period for any private civil action implied under section 78j(b) of this title that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

(b) Effect on dismissed causes of action

Any private civil action implied under section 78j(b) of this title that was commenced on or before June 19, 1991—

(1) which was dismissed as time barred subsequent to June 19, 1991, and

(2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991,

shall be reinstated on motion by the plaintiff not later than 60 days after December 19, 1991.

The *Plaut* majority stated that "Congress may not declare by retroactive legislation that the law applicable to that very case was something other than what the courts said it was."[26] It also implicitly recognized, however, the flexibility of the doctrine of separation of powers. The Court distinguished earlier cases in which separation of powers concerns were present, yet not invasive enough to render the legislation unacceptable.

B

The majority in *Plaut* observed that legislative action had been upheld as valid in cases where the tribunal issuing the judgment was not an article III court, *Sampeyreac v United States*, 32 US (7 Pet) 222; 8 L Ed 665 (1833);[27] where the judgment came from an administrative agency, *Paramino Lumber Co v Marshall*, 309 US 370; 60 S Ct 600; 84 L Ed 814 (1940);[28] where the government had waived its right

---

[26] 514 US 227.

[27] In *Sampeyreac*, the plaintiff claimed that he was granted land by the Arkansas territorial governor pursuant to a congressional statute. His claim was upheld in 1824 by an article I territory court. Subsequently, the United States district attorney filed a bill of review as later permitted under the act of 1830, contending that the original decree was based on fraud and surprise. The lower court found in favor of the government, and the Supreme Court upheld on appeal despite separation of powers concerns. The Court held, "The law of 1830 is in no respect the exercise of judicial powers. It only organizes a tribunal with powers to entertain judicial proceedings." *Id.* at 239.

[28] In *Paramino*, the plaintiff was injured while working as a longshoreman in navigable waters. The plaintiff filed an application pursuant to the compensation act for disability benefits. The deputy commissioner ruled against the plaintiff in 1931 and no appeal was taken. *Id.* at 375.

Subsequently, the plaintiff's condition continued to deteriorate. In response, Congress enacted a private act, ordering the compensation commission to review the plaintiff's case and issue a new order despite the fact that the prior award was final and not now appealable. The commissioner performed the review and, after concluding that the plaintiff was

to have the judgment accorded conclusive res judicata effect, *United States v Sioux Nation*, 448 US 371; 100 S Ct 2716; 65 L Ed 2d 844 (1980), *Cherokee Nation v United States*, 270 US 476; 46 S Ct 428; 70 L Ed 694 (1926);[29] and where the Congress acted to validate public, rather than private, rights; *Pennsylvania v Wheeling & Belmont Bridge Co*, 59 US (18 How) 421; 15 L Ed 435 (1855).[30]

---

disabled, granted him an award from 1931 until 1939. *Id.* at 377. Paramino appealed on the ground that the private act was unconstitutional. The Supreme Court disagreed and affirmed the plaintiff's award.

[29] In *Sioux Nation*, Congress enacted a law requiring the Court of Claims to "review on the merits, . . . without regard to the defenses of res judicata or collateral estoppel" Sioux claims maintaining that they should be compensated by the United States government for prior taking of Sioux property. *Id.* at 389. Relying on this law, members of the Sioux Tribe brought suit. Although the specific issue raised had already been litigated and lost by the Sioux before the passage of the legislation, the Supreme Court held it constitutionally permissible to allow the Sioux to relitigate previous claims on the ground that the government consented to waive the res judicata effect of the prior judgments.

In *Cherokee Nation*, the plaintiffs brought suit under a private act, enacted after a final judgment had been entered, which gave them the right to relitigate a claim against the government for interest payments.

[30] The United States Supreme Court, in May, 1852, declared a bridge to be an obstruction of the free navigation of the Ohio River and directed that the bridge be raised or removed. *Id.* at 429. In August of that year, the bridge was declared to be a lawful structure by an act of Congress. The bridge subsequently blew down. While the defendant was making preparations to rebuild the bridge, the plaintiff brought an action, seeking an injunction on the basis of the prior Supreme Court decision. The defendant did not oppose the plaintiff's motion, and it was granted. The defendant continued to build, however, and when a motion for contempt was filed by the plaintiff, the defendant moved to dissolve the injunction.

The Supreme Court, in *Wheeling & Belmont Bridge*, acknowledged that usually the right to enforce a court's final judgment is absolute and not subject to legislative interference. The Court concluded that because the act dealt with public navigation rights as distinguished from a private right to a damage award, no separation of powers concerns were implicated.

IV

An analysis of subgroups ir which workers injured before March 31, 1982, fall indicates that resolution of the separation of powers issue, in accordance with *Plaut*, clearly entitles most workers affected to a full, unreduced, and uncoordinated benefit, either because no case was ever pending before the WCAB or because their cases were dismissed by the WCAB, an administrative tribunal and not a court, on its own initiative, and not pursuant to a directive from this Court or the Court of Appeals.

A

Because the doctrine of separation of powers bars the Legislature from reopening and setting aside orders entered by a *court*, workers injured before March 31, 1982, should be divided into two groups: those who accepted coordination and thus a reduced weekly benefit from and after March 31, 1982, without filing a petition seeking a hearing, and those who objected and sought a hearing resulting in an administrative or judicial determination. Those who objected and sought a hearing may be further divided into two groups: those whose cases were pending before the WCAB when *Franks* was decided, and those whose cases had been decided by the WCAB and were pending in the judicial appellate pipeline before the Court of Appeals or this Court.

B

No administrative or court order was entered concerning those who did not object, and who accepted a reduced benefit, and thus no separation of powers issue can arise respecting the 1987 retroactive legisla-

tive directive barring coordination. They were paid in full in 1987 by General Motors an uncoordinated benefit from and after March 31, 1982, pursuant to subsections 354(17)-(20) as added by the 1987 legislation.

An administrative tribunal is not a court—it is not part of the judicial branch of government. Because the WCAB is not a court, but an administrative tribunal, arguably there is no separation of powers issue with respect to those workers whose cases were pending before the WCAB when *Franks* was decided, and whose cases were dismissed or resolved on the initiative of the WCAB on the basis of *Franks* by entry of an order on the authority of *Franks. Paramino Lumber Co v Marshall*[31] was distinguished in *Plaut* on that basis.[32] Simply because an administrative tribunal cites a rule of law or other precedent established by a court does not convert the order of an administrative tribunal into an order of a court.

C

Following this Court's decision in *Franks*, orders were entered by this Court in *Quinton* and in at least thirty-nine other cases, remanding them to the WCAB "for entry of a judgment consistent with *Franks* . . . ."[33] Although the operative order reducing Quinton's benefits was entered by the WCAB, rather than by a court, under the circumstance that the WCAB acted at the express direction of this Court in entering a judgment consistent with this Court's decision in *Franks*, it is, I think, clear that those orders should

---

[31] Discussed in n 28.

[32] 514 US 232.

[33] See Actions on Applications to the Supreme Court, 424 Mich 883-886 (1986).

be deemed to be, for separation of powers analysis, orders entered by a court.

We are not informed concerning the nature of the orders entered by the Court of Appeals in the cases pending before it when *Franks* was decided, whether they, too, directed the WCAB to enter a judgment consistent with this Court's decision in *Franks*, or whether they simply remanded for reconsideration in light of *Franks*, nor are we informed how many such orders were entered by the Court of Appeals. Although not necessary to decision, since I conclude that because there is no reopening or setting aside of an order or judgment, the doctrine of separation of powers was not violated, I am inclined to treat an order entered by an administrative tribunal, pursuant to a court order directing reconsideration in light of a recently announced judicial decision, as an order implicating the doctrine of separation of powers.

V

In *Plaut*, subsection 27A(b) provided that certain actions that had been "*dismissed* as time barred" and "which would have been timely filed" under concepts identified in § 27A "*shall be reinstated* on motion by the plaintiff not later than 60 days after December 19, 1991."[34]  (Emphasis added.) The United States Supreme Court summarized its holding in the following statements:

> By retroactively commanding the federal courts to *reopen* final judgments, Congress has violated this fundamental principle.[35]

---

[34] See n 25, for text of § 27A.
[35] 514 US 219.

> We know of no previous instance in which Congress has enacted retroactive legislation requiring an Article III court to *set aside* a final judgment, and for good reason. The Constitution's separation of legislative and judicial powers denies it the authority to do so. Section 27A(b) is unconstitutional to the extent that it requires federal courts to *reopen* final judgments entered before its enactment. [Emphasis added.][36]

A

The key words in the summarizing statements are "reopen" and "set aside." The 1987 legislation amending § 354—in contrast with subsection 27A(b), which expressly required the "reinstatement" of actions that had been "dismissed," and thus the "reopening" and "setting aside" of final judgments entered by United States district courts—did not require the reopening or setting aside of any order entered by the WCAB pursuant to *Franks*.

Pursuant to the 1986 WCAB order entered in *Quinton*, General Motors paid him a reduced coordinated weekly benefit of $18.79 until the effective date of the 1987 legislation.[37] Thus, the order entered pursuant to this Court's directive remanding to the WCAB for entry of an order pursuant to *Franks*, was implemented—it was not reopened or set aside.

General Motors concedes that from and after the May 14, 1987, effective date of the 1987 legislation, the weekly benefit may not be reduced by coordination with Quinton's pension. Thus, General Motors does not claim that the doctrine of separation of pow-

---

[36] 514 US 240.

[37] The $90.90 weekly benefit before coordination, less $72.11, the amount of the pension attributed to General Motors contributions.

ers precludes the Legislature from modifying, reopening, or setting aside the orders entered by the WCAB pursuant to *Franks* from and after the effective date of the 1987 legislation.

The issue then becomes whether the 1987 legislation violates the doctrine of separation of powers in requiring that Quinton and others be paid for the period between the March 31, 1982, effective date of the 1981 legislation and the May 14, 1987, effective date of the 1987 legislation, the weekly benefit, without reduction for coordination with a pension or other retirement benefits identified in the 1981 legislation.

Because the 1987 legislation does not, with regard to periods before the May 14, 1987, effective date of the 1987 legislation, require a reopening or setting aside of the 1986 WCAB orders, except possibly with respect to periods after the effective date of the 1987 legislation—which General Motors concedes does not involve any separation of powers issue—the 1987 legislation does not violate the doctrine of separation of powers concerning periods before its effective date.

To be sure, the 1987 legislation sought to modify the result of *Franks*, by barring coordination retroactively between March 31, 1982, and May 14, 1987, and by requiring repayment by General Motors to workers injured before March 31, 1982, of amounts deducted pursuant to *Franks*. But, *Plaut* does not preclude the Legislature from so modifying the operative effect of a prior judgment or order, if this can be accomplished without reopening or setting aside a judgment entered by a court.

The 1987 legislation operates independently of reopening or setting aside the 1986 WCAB orders. It

simply requires payment to all in Quinton's class an uncoordinated benefit from and after March 31, 1982. It is of no importance whether the Legislature, in fact, intended, when 1981 PA 203 was enacted, that benefits would be coordinated, as this Court concluded in *Franks*, or simply changed its mind and decided, after the clamor following the announcement of this Court's decision in *Franks*, to amend the law to repeal and eliminate coordination retroactively.

The 1987 legislation, requiring payment to each worker of the amount that was deducted, does not implicate the doctrine of separation of powers simply because it modifies the operative effect of the *Franks* decision *retroactively*. The Legislature can constitutionally accomplish its will without a violation of the doctrine of separation of powers because this was accomplished independently of any reopening or setting aside of orders entered pursuant to *Franks*.

B

It might be urged that it elevates form over substance to hold that the doctrine of separation of powers does not preclude the Legislature from accomplishing indirectly by independent or separate legislation changes in the operative effect of a prior judgment that are in practical effect tantamount to reopening or setting aside a judgment.

It is, however, fundamental that the Legislature is empowered to overrule a judicial decision, and change the substantive law; that it may do so prospectively is indisputable. That it may even do so retroactively, at least insofar as worker's compensation benefits are concerned, is equally well established as

set forth in *Romein* and in the decisions discussed in part VI.

There is thus unavoidable tension between the power of the Legislature to legislate retroactively and the judicial power to enter final judgments. Where to draw the line is then the question—should it be drawn to bar only retroactive legislation that actually reopens or sets aside a judgment, or also to bar retroactive legislation that does not actually do so, but has the operative effect of doing so?

Text writers and others have written in broad terms regarding the scope of the doctrine of separation of powers. It is significant, however, that *Plaut* appears to be the first pertinent[38] decision of the United States

---

· [38] In *Plaut*, the United States Supreme Court identified two types of legislation violative of the doctrine of separation of powers that are not here pertinent:

Our decisions to date have identified two types of legislation that require federal courts to exercise the judicial power in a manner that Article III forbids. The first appears in *United States v Klein* [80 US (13 Wall) 128; 20 L Ed 519 (1871)], where we refused to give effect to a statute that was said "[t]o prescribe rules of decision to the Judicial Department of the government in cases pending before it." *Id.* at 146. Whatever the precise scope of *Klein*, however, later decisions have made clear that its prohibition does not take hold when Congress "amend[s] applicable law." *Robertson v Seattle Audubon Society*, 503 US 429, 441 [112 S Ct 1407; 118 L Ed 2d 73] (1992). Section 27A(b) indisputably does set out substantive legal standards for the Judiciary to apply, and in that sense changes the law (even if solely retroactively). The second type of unconstitutional restriction upon the exercise of judicial power identified by past cases is exemplified by *Hayburn's Case* [n 19 *supra*], which stands for the principle that Congress cannot vest review of the decisions of Article III courts in officials of the Executive Branch. See, *e.g.*, *Chicago & Southern Air Lines, Inc v Waterman SS Corp*, 333 US 103 [68 S Ct 431; 92 L Ed 568] (1948). Yet under any application of § 27A(b) only courts are involved; no officials of other departments sit in direct review of their decisions. Section 27A(b) therefore offends neither of these previously established prohibitions. [514 US 218.]

Supreme Court to actually hold that an act of Congress was unconstitutional because it violated the doctrine of separation of powers. In all the other cases, *Sampeyreac*,[39] *Paramino Lumber Co*,[40] *Sioux* and *Cherokee Nation*,[41] *Wheeling & Belmont Bridge Co*,[42] and *Robertson*,[43] the legislation was found to be constitutional.

In the three Michigan cases where the doctrine of separation of powers was adverted to, only *Moser v White*, 29 Mich 59 (1874),[44] held the legislative act to be unconstitutional insofar as it would reopen a final judgment. In *Wylie v Grand Rapids City Comm*, *supra*, this Court found, after discussing in dicta the doctrine of separation of powers, that the act was not retroactive and, hence, did not apply to judgments entered before the legislation was enacted.[45] In *Butler v Saginaw Co Bd of Supervisors*, 26 Mich 21, 27-28 (1872), this Court found, after first referring in dicta to the doctrine of separation of powers, that the curative act failed to overcome the deficiencies in the law and in the procedure followed, so that the application for a writ of mandamus to compel the board of supervisors to levy drain taxes must be denied. The Court observed with some delicacy: "The line which separates judicial from legislative authority is clear and

---

[39] Discussed in n 27.

[40] Discussed in n 28.

[41] Discussed in n 29.

[42] Discussed in n 30.

[43] Discussed in n 51.

[44] Discussed in n 51.

[45] The Court said that the amendatory legislation was "clearly and unambiguously retrospective as to all proceedings which '*shall be* commenced, entertained, or continued . . . to compel payment' " of a refund of special assessments. *Id.* at 585.

distinct, and the principle is so well settled and understood that it is seldom called in question, and probably not often violated except through inadvertence."

The decision of the United States Supreme Court in *Plaut* is limited to a "reopening" or "setting aside" of a final judgment.[46] The Court said that "the doctrine of separation of powers is a *structural safeguard* rather than a remedy to be applied only when specific harm, or risk of specific harm, can be identified," (emphasis in original) and spoke of the importance of "establishing high walls and clear distinctions because low walls and vague distinctions will not be judicially defensible in the heat of interbranch conflict."[47]

Were this Court to expand the doctrine of separation of powers beyond the actual "reopening" or "setting aside" of a judgment to bar acts of the Legislature that do not actually reopen or set aside final judgments, but have the operative effect of doing so, it would become engaged in drawing vague rather than clear distinctions.

The doctrine of separation of powers operates somewhat arbitrarily. Of those who were injured before March 31, 1982, probably the greatest number[48] are in the subgroup consisting of those who

---

[46] See ns 35 and 36 and accompanying text.

[47] 514 US 239.

[48] In *Romein*, the United States Supreme Court said that as a result of the 1987 legislation General Motors and Ford Motor Company were required to refund nearly $25 million to disabled employees. Note 11 *supra*, 503 US 186. Romein's weekly payment had been cut $132 a week and Gonzalez, $176 a week. *Id.* at 184. Quinton's weekly payment was reduced by $72.11. It appears therefore that the annual reduction for pre-March 31, 1982, injured workers ranged from under $4,000 to as much as

accepted coordination without seeking a hearing. Their claims clearly cannot be denied—even though the operative effect of recognizing their claims undercuts this Court's decision in *Franks*—on the basis of the doctrine of separation of powers because there is neither a judgment of a court nor even a WCAB order requiring coordination.

Similarly, the subgroup consisting of those whose cases were still pending before the WCAB when *Franks* was decided, who arguably cannot be precluded under the doctrine of separation of powers, because the WCAB orders requiring coordination pursuant to *Franks* were entered on the WCAB's initiative without a directive from the Court of Appeals or this Court, also can be seen as benefiting by a somewhat arbitrary line.

Since the doctrine of separation of powers, as elucidated in *Plaut*, is a structural safeguard, a prophylactic device, rather than an immutable principle, there is no need to erect a wall higher than that established by the United States Supreme Court in *Plaut*, where the holding is limited to actually "opening" or "setting aside" a judgment.

VI

In *Romein*, this Court affirmed the power of the Legislature to enact a retroactive benefit, and the

---

$10,000 or more. The number of years involved was a little over five, and, thus, $20,000 to $50,000 per worker.

Only forty cases were remanded by this Court to the WCAB for entry of a judgment consistent with this Court's decision in *Franks*. See n 33 and accompanying text. If there were one hundred such cases, including those remanded by the Court of Appeals, it appears that the amount involved resulting from orders entered by the WCAB pursuant to directives by this Court and the Court of Appeals, would be less than $5 million, or less than twenty percent of the $25 million involved.

United States Supreme Court affirmed, saying there was no due process violation.[49]

A

A worker's compensation award is distinguishable from a judgment in an action in tort or for breach of contract. Worker's compensation provides a system of income maintenance. *Franks, supra* at 654. Partially in recognition of this, the Court has held that a worker's compensation award is subject to modification both prospectively and retrospectively, in response to changes in law and fact. See *Goines v Kelsey Hayes Wheel Co*, 294 Mich 156, 158; 292 NW 686 (1940); *Romein, supra.*

Because the circumstances affecting a worker's compensation award are subject to change, this Court has said that, unlike awards handed down in cases arising in other areas of law, "the amount of an employee's award [in a worker's compensation case]

---

[49] The bulk of the unanimous decision of the Court was devoted to the rejection of General Motors' claim that the 1987 legislation violated the Contract Clause of the Constitution of the United States.

Addressing the due process claim, the Court said that retroactive or prospective economic legislation must, to satisfy due process, have "a legitimate legislative purpose furthered by rational means." The Court said:

The statute in this case meets that standard. The purpose of the 1987 statute was to correct the unexpected results of the Michigan Supreme Court's *Chambers* opinion. The retroactive repayment provision of the 1987 statute was a rational means of meeting this legitimate objective: *It preserved the delicate legislative compromise that had been struck by the 1980 and 1981 laws*—giving workers injured before 1982 their full benefits without coordination, but not the greater increases given to subsequently injured workers. Also, *it equalized the payments made by employers who had gambled on the* Chambers *decision with those made by employers who had not.* [Note 11 *supra,* 503 US 191 (emphasis added).]

is never final . . . ." *Pike v City of Wyoming*, 431
Mich 589, 602; 433 NW2d 768 (1988). "Finality is not
in the design or the interest of the workers' compen-
sation scheme." *Id.* at 606 (BRICKLEY, J., concurring).[50]

This Court has also recognized that when an award
granted pursuant to the worker's compensation act is
to be paid "until further order," as is the case here, it
is not a "final determination" and it cannot be
"accorded the conclusive effect of res judicata . . . ."
*Kosiel v Arrow Liquors Corp*, 446 Mich 374, 381; 521
NW2d 531 (1994). See also *White v Michigan Consol-
idated Gas Co*, 352 Mich 201, 210; 89 NW2d 439
(1958) (decision from the WCAB "ordering payment of
compensation until further order of the board . . .
does not finally determine rights to compensation").

More fundamentally, as this Court made clear in
*Romein*, an award may be retroactively increased,
decreased, or modified legislatively with respect to
coordination or otherwise at any time. An employer
has "no vested rights in the finality of the coordinated
benefits paid." *Id.* at 532.

The factual matrix in this case is thus distinguisha-
ble from that in *Plaut*. United States District Court
decisions, following the holding in *Lampf* that no
cause of action may lie, could not have been dis-
turbed after the right to an appeal had run, absent
exceptional circumstances not relevant. Unlike WCAB

---

[50] Although a worker's compensation award is never final, and the
amount of the award is not entitled to conclusive res judicata effect, a tri-
bunal's decision with respect to its finding of an underlying disability or
work-relatedness is ordinarily considered final and is to be accorded def-
erence absent a showing of a change of circumstances. *Kosiel v Arrow
Liquors Corp*, 446 Mich 374, 380; 521 NW2d 531 (1994).

awards, those decisions were, in every sense, final judgments.[51]

B

Unlike *Plaut*, where "[t]o be sure, § 27A(b) *reopens* (or directs the *reopening* of) final judgments in a whole class of cases,"[52] (emphasis added) the Legislature, by enacting 1987 PA 28, did not subject to reopening either the decision of this Court remanding Quinton's case in light of *Franks* or the WCAB's order on remand pursuant to *Franks*.

---

[51] Because the award portion of a WCAB decision is always subject to change, this case is somewhat analogous to *Robertson v Seattle Audubon Society*, n 38 *supra*. The United States Supreme Court held that litigation that directly and intentionally affected the outcome of two cases already decided *but pending on appeal* did not violate separation of powers principles. Although the instant case is not "pending" in the sense that Quinton's representative may formally appeal the 1986 decision of the WCAC, to the extent Quinton could, if alive, reopen the case and have a redetermination made, a parallel does exist between the two.

See also *In re JN*, 91 Ill 2d 122, 128; 435 NE2d 473 (1982) ("In determining whether a judgment is final, one should look to its substance rather than to form"); 46 Am Jur 2d, Judgments, § 200, p 517 ("[T]here is no rule for determining whether and when a judgment is final . . . . [I]t is the effect of a judicial act and not the trial court's characterization of it that determines whether it is a final judgment. In determining whether a judgment is final, one should look to its substance rather than to its form").

In *Moser*, n 20 *supra*, the plaintiff had recovered a judgment before a justice of the peace for seizing and selling his property to pay an illegal village tax. The Legislature enacted a "curing act" to legalize the tax roll. It does not appear whether the action of the circuit court in reversing on certiorari the judgment obtained before a justice of the peace was on direct appeal, or rather after the judgment had become "final." This Court said that the Legislature had no authority to reverse the judgment, directly or indirectly, or to "interfere" with it.

[52] 514 US 227.

The legislation involved in *Plaut* directed the district courts to reinstate cases that had been dismissed, n 25 *supra*. The 1987 legislation involved in this case did not direct that any action be taken to reopen cases decided before its effective date.

As this Court made clear in prior decisions and discussed above, because a worker's compensation award is always subject to modification for any of a number of reasons and is never final, a change in the amount of an award is distinguishable from a change in a determination of eligibility or work-relatedness of the injury or disability. *White v General Motors Corp*, 431 Mich 387, 395-396, n 7; 429 NW2d 576 (1988); *Pike*, 431 Mich 599-602. Similarly, a statute that provides a retroactive increase in the amount of benefits to be paid to an employee "differs qualitatively" from one that affects a claimant's eligibility or work-relatedness. *Romein, supra* at 532 (citing *White, supra*).

Further, 1987 PA 28 does not require the Court to "reopen" anything. The WCAC findings of fact are not affected, nor are any new findings required.[53] No new evidentiary matters are considered. The initial hearing and determination remain intact and unaffected. The only consequence is that Quinton's recovery will be enlarged by an amount determined in a manner *independent* of all factors considered at the initial eligibility determination.

The effect of the Legislature's enactment of 1987 PA 28 is not to send the case back for a new order on the basis of the merits. Rather than modifying an existing order, the legislation may more properly be seen as providing a *new benefit*. As the branch of government responsible for promulgation of the state's laws, the Legislature may pursue by rational

---

[53] See *Paramino*, n 28 *supra* at 378. Cf. *Robertson*, n 38 *supra* at 438 (concluding that the statute at issue does not violate the separation of powers doctrine in part because "[it] compelled changes in law, not findings or results under old law").

means any legitimate purpose. *Grocers Dairy Co v
Dep't of Agriculture Director*, 377 Mich 71, 76; 138
NW2d 767 (1966). This no doubt includes the power
to provide an economic benefit to a class of persons
that it considers deserving even if a court had ruled
otherwise.

VII

There is, indeed, an element of injustice to General
Motors, Ford Motor Company,[54] and any other
employer who may have obtained orders from the
WCAB on remand from this Court or the Court of
Appeals directing that benefits be coordinated, in
denying them any benefit from their victory in
*Franks*. But there would also be an element of injus-
tice in requiring coordination for five years until the
May 14, 1987, effective date of the 1987 legislation,
for pre-March 31, 1982, injured workers who con-
tested the employer's claim that benefits should be
coordinated[55] and sought a hearing, while allowing
injured workers, who sat on their rights and did not
contest coordination, payment in full without coordi-
nation of their weekly benefits because no judgment
of a court, or even an order of the WCAB, had been
entered.[56]

If the WCAB's 1986 decision on remand ordering
coordination in Quinton's case were insulated from

---

[54] See n 48.

[55] When General Motors began coordinating benefits in 1982, Quinton
promptly sought relief from the bureau. The matter was then heard by a
hearing referee and by the WCAB. The Court of Appeals denied leave to
appeal, and this Court, after holding the case in abeyance for *Franks*,
remanded to the WCAB for resolution in accordance with *Franks*. Such
an order was entered, and the case was remained in that posture until the
enactment of 1987 PA 28 and the decision in *Romein*.

[56] See part IV(A) and (B), ns 31 and 32 and accompanying text.

the will of the Legislature as expressed in subsections 354(17)-(20) by the doctrine of separation of powers, then the result would be that Quinton could receive only coordinated benefits until May, 1987, while the worker who sat on his rights would receive full uncoordinated benefits.

The United States Supreme Court recognized that similarly situated plaintiffs should be treated in like fashion in its review of this Court's decision in *Romein*. In dismissing General Motors' due process argument, the Court commented that one of the legitimate objectives accomplished by the 1987 legislation was that it

> equalized the payments made by employers who had gambled on [*Franks*] with those made by employers who had not. *Cf. United States v Sperry Corp*, 493 US 52, 64-65 [110 S Ct 387; 107 L Ed 2d 290] (1989) (legitimate to legislate retrospectively in order to ensure that similarly situated persons bear similar financial burdens of program).[57]

A commentator observed that "[t]he legitimacy of the judiciary depends, in large part, upon the treatment of like cases in a like manner."[58]

The function of the doctrine of separation of powers is to protect the independence of the judiciary by insulating from legislative encroachment final judicial judgments, and is not to attempt to achieve real or abstract justice between private litigants. But in

---

[57] 503 US 181, 191-192; 112 S Ct 1105; 117 L Ed 2d 328 (1992). Cf. *James B Beam Distilling Co v Georgia*, 501 US 529, 541; 111 S Ct 2439; 115 L Ed 2d 481 (1991) ("[W]hy should someone whose failure has otherwise become final not enjoy the next day's new rule, from which victory would otherwise spring?").

[58] Note, *Is purely retroactive legislation limited by the separation of powers?: Rethinking* United States v Klein, 79 Corn L R 910, 949 (1994).

deciding where to draw the line, this Court should consider whether there is need, in order to protect the independence of the judiciary, to draw the line differently or erect the wall higher than the United States Supreme Court did in *Plaut*. I conclude, having in mind the infrequency with which legislation is enacted that even arguably crosses the separation of powers line, that there is no need to do so in the instant case.

## VIII

A properly enacted statute is binding law except to the extent that it violates the United States Constitution or the Constitution of Michigan. As an equal branch of government, the judiciary is obliged to enforce the enactments of the Legislature to the extent permitted by the constitution.

General Motors does not dispute that Quinton, having suffered his disabling injury before 1982, was among the class of applicants that the Legislature, through 1987 PA 28, intended would enjoy uncoordinated benefits. It is well settled that the Worker's Disability Compensation Act is to be construed to accomplish its remedial purposes.[59] Therefore,

---

[59] 1987 PA 28 is even more specific, declaring:

The decision of the Michigan Supreme Court in *Franks v White Pine Copper Division*, 422 Mich 636 (1985) is declared to have been erroneously rendered insofar as it interprets this section, it having been and being the legislative intention not to coordinate payments under this section resulting from liability pursuant to section 351, 361, or 835 for personal injuries occurring before March 31, 1982. It is the purpose of this amendatory act to so affirm. *This remedial and curative amendment shall be liberally construed to effectuate this purpose.* [MCL 418.354(17); MSA 17.237(354)(17) (emphasis supplied).]

because 1987 PA 28 does not violate either the United States or Michigan Constitution, Quinton is entitled to receive benefits improperly coordinated.

The January, 1994, decision of the WCAC should be reversed, and the case remanded to the WCAC for proceedings consistent with this opinion.

BOYLE, J. (*concurring*). There is no serious argument that the decision of this Court in *Chambers v General Motors Corp*, a companion case to *Franks v White Pine Copper Div*,[1] incorrectly interpreted the intent of the Legislature. In indicating that I would grant the motion for reconsideration, which was supported by, among others, former Governor William Milliken, I observed that, given the "harsh and unforeseen consequences" of the decision, inclinations to support the finality of litigation should yield to the question whether we had correctly determined the intent of the Legislature, 424 Mich 1202 (1985). Because we would compound the error committed by the denial of reconsideration and further penalize employees who pursued their rights, it would be unconscionable not to recognize a public-policy exception to res judicata in these circumstances.

The crucial issue in this case is whether the doctrine of res judicata as construed in Michigan applies to bar plaintiff from again litigating whether his worker's compensation award should be subjected to coordination with other sources. The doctrine of res judicata

> applies not only to issues of fact and law which were actually litigated and decided, but also to any issue which might

---

[1] 422 Mich 636; 375 NW2d 715 (1985).

have been litigated at that time. . . . Therefore, if during
the adjudication of a dispute a pertinent issue of law or fact
is raised and decided, or properly should have been raised,
res judicata will bar the relitigation of that issue in a subse-
quent action. [*Pike v City of Wyoming*, 431 Mich 589, 612-
613; 433 NW2d 768 (1988) (BOYLE, J., dissenting).]

In other words, under the doctrine of res judicata,
claims that were or could have been reduced to final
judgment are barred from being brought a second
time.

All members of the Court have recognized that res
judicata is a judicially created doctrine. *Riley v
Northland Geriatric Center (After Remand)*, 431
Mich 632; 433 NW2d 787 (1988). In *Pike*, a majority
of this Court held that the doctrine of res judicata,
while applicable in worker's compensation proceed-
ings, is not always a bar to modifications of worker's
compensation awards where there has been a subse-
quent change in the law. 431 Mich 598-599 (opinion of
GRIFFIN, J.); 431 Mich 608 (BRICKLEY, J., concurring).[2] In
my dissent in *Pike*, I advocated a stricter application
of res judicata to worker's compensation proceedings
and contended the doctrine applied both to rulings
regarding eligibility and to rulings regarding the
amount of benefits. 431 Mich 620. I also acknowl-
edged, however, that, in some cases, "[t]here may be
matters of public policy so extraordinary as to justify
a departure from res judicata principles." 431 Mich

---

[2] Both the lead opinion and the concurring opinion in *Pike* intimated
that when there is a change in the law through a statutory amendment,
res judicata principles are set aside, and this Court's task is to effect the
intent of the Legislature. 431 Mich 596 (opinion of GRIFFIN, J.); 431 Mich
607, n 5 (BRICKLEY, J., concurring). The language of 1987 PA 28 unequivo-
cally indicates that the Legislature intended not to coordinate the benefits
of persons who, like plaintiff, were injured before March 31, 1982.

630. In my view, this is an extraordinary circumstance.

1 Restatement Judgments, 2d, recognizes an exception to the general rule of claim preclusion in § 26(1)(d), p 234, when "[t]he judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme . . . ." In such a situation, the doctrine of res judicata does not apply to extinguish the claim. Comment e to § 26, p 239, states that res judicata should not be applied where it would be inequitable to do so,

> especially when there is a change of law after the initial decision. When such inequities involve important ongoing social or political relationships, a second action should be allowed even if the claim set forth is not viewed as different from that presented in the initial proceeding.

A rigid interpretation of res judicata would perpetuate the harsh consequences this Court declined to revisit in *Chambers* and hinder implementation of the Legislature's intent.

Given the importance of the principle that litigation should come to an end, exceptions should be employed sparingly. However, as Professor Moore has observed:

> A good case can be made for the proposition that frank recognition of some limited power to temper rules along equitable lines results in their more faithful application. Justice is like a balloon full of water; squeeze it at one point and it bulges at another. [1B Moore, Federal Practice (2d ed), ¶ 0.405(12), p 111-77.]

Although I agree with the lead opinion to the extent that there are diminished reliance interests in worker's compensation determinations, *ante* at 90-91

(Levin, J.), I would not "squeeze the balloon" to conclude that a worker's compensation award is not a final judgment per se. *Id.* at 91-92. Such a construction would encourage separation of powers confrontations and invite a future Legislature to reopen final and unappealed determinations. Rather, I would frankly acknowledge that this Court has the authority to remedy the inequitable results in this case by declining to enforce the judge-made rule of res judicata under these extraordinary circumstances.

On the merits of plaintiff's renewed claim, I agree with Justice Levin's lead opinion that separation of powers is not violated by this result. The Legislature may not constitutionally command this Court to reopen judgments, *Plaut v Spendthrift Farm, Inc,* 514 US 211; 115 S Ct 1447; 131 L Ed 2d 328 (1995), and it has not done so. It is a different question whether the judiciary has that authority in extraordinary circumstances, *id.* at 236.[3] I agree with Justice Cavanagh that the equities in this case compel awarding uncoordinated benefits.

Mallett, J., concurred with Boyle, J.

Cavanagh, J. (*concurring*). I agree with the lead opinion that the 1986 WCAB order that was entered at the express direction of this Court[1] was, for all intents and purposes, this Court's order. Levin, J., *ante* at 81-82. However, I disagree with the conclusion of

---

[3] As the Court noted in *Plaut*, FR Civ P 60(b), and the tradition it embodies, would be relevant refutation of a claim that reopening a first judgment is always a denial of property without due process. *Plaut* at 236. Moreover, as the dissent fails to note, defendant does not contend that due process precludes the relief sought.

[1] 424 Mich 884 (1986).

the lead opinion that the amount of benefits subjected to coordination from March 31, 1982, through May 28, 1986, pursuant to this Court's 1986 order, was not a final judgment. *Id.* at 91. As stated by Justice BOYLE in *Pike v City of Wyoming*, 431 Mich 589, 620; 433 NW2d 768 (1988), the principle of finality should apply to *court* rulings both with respect to eligibility for benefits and to the amount of those benefits. Accordingly, I would hold that the 1986 order was final with respect to accrued benefits subject to the order. Conversely, *prospective* benefits, accruing *after* the 1986 order, would not be final because "[t]here are no vested rights in the amount of liability established at the time of an injury." *Romein v General Motors Corp*, 436 Mich 515, 531; 462 NW2d 555 (1990). Therefore, under our analysis in *Romein*, I believe that this employer had a vested right to coordinate benefits for the period subject to this Court's remand order.[2] Consequently, I believe that legal principles should lead to the conclusion that the employer should be allowed to coordinate benefits for that period.

Nevertheless, the *equitable* considerations presented by this employee and other similarly situated employees would justify this Court in setting aside the 1986 orders and precluding coordination.[3] Pursuant to *Romein*, employees who were injured before March 31, 1982, but who quietly accepted coordination of their benefits after 1981 PA 203, are not sub-

---

[2] The subject period was from March 31, 1982, the effective date of 1981 PA 203, through May 28, 1986, the date of the WCAB order on remand from this Court.

[3] MCR 7.316(A)(7) provides that this Court may enter any relief that the case requires.

ject to any coordination. In contrast, under my analysis, employees injured before March 31, 1982, like Quinton, who did not quietly accept coordination, but instead pursued their rights to appeal, which unfortunately resulted in disadvantageous results to them in this Court, *would* be subject to coordination for the period covered by this Court's 1986 remand orders to the WCAB. However, it would be manifestly unfair to penalize employees who vigorously pursued their rights, while rewarding those similarly situated employees who did not pursue their rights. Further, the Legislature expressly indicated in 1987 PA 28 that it did not intend employees injured before March 31, 1982, to be subject to any coordination.[4] Given the unfairness of treating employees injured before March 31, 1982, differently, in addition to the express legislative intent not to subject these employees to coordination of benefits, I believe that we should preclude coordination of benefits for all such employees.

In sum, I concur with the disposition of this case, remanding to the WCAC for further proceedings. However, I would not reach the separation of powers issue addressed by the lead opinion. Instead, I would invoke our equitable power and grant equitable relief to Quinton.

RILEY, J. (*dissenting*). We granted leave to consider whether the order entered by the Worker's Compensation Appeal Board was a final "judgment" and therefore an exception to *Romein v General Motors Corp*, 436 Mich 515; 462 NW2d 555 (1990), aff'd 503 US 181; 112 S Ct 1105; 117 L Ed 2d 328 (1992), in which this Court upheld 1987 PA 28 prohibiting coordination of

---

[4] See LEVIN, J., *ante* at 70, n 9.

benefits for injuries arising before March 31, 1982. Instead, the lead opinion evades the fundamental issue in this case in order to revisit the due process and separation of powers issues already decided by this Court in *Romein*. The lead opinion declares that the minimal constitutional protection afforded by the final judgment exception established by the Court in *Romein* is dicta. The lead opinion then engages in a separation of powers discussion and ultimately concludes that the doctrine is not violated because 1987 PA 28 did not, consistent with *Plaut v Spendthrift Farm, Inc*, 514 US 211; 115 S Ct 1447; 131 L Ed 2d 328 (1995), "reopen" or "set aside" a judgment entered by a court. Because I believe the lead opinion has misstated the issue and reached an erroneous conclusion, I dissent and would affirm the decision of the WCAB.

I

In *Chambers v General Motors Corp*, decided with *Franks v White Pine Copper Div*, 422 Mich 636; 375 NW2d 715 (1985), this Court decided whether 1981 PA 203, providing for coordination of benefits under MCL 418.354; MSA 17.237(354), applied to persons injured before the March 31, 1982, effective date.[1] The Court held that the unambiguous language of § 354 required coordination of worker's compensation and other

---

[1] *Chambers* described the application of § 354 as follows:

This section provides that an employer may coordinate employee benefits, by applying against its workers' compensation obligations payable for compensable periods after its effective date, that portion of certain other benefits, such as pensions and social security payments, also received by the employee and financed by the employer. [*Id.* at 647.]

specified benefits for all compensable periods, after the effective date of the statute, regardless of the date of the worker's injury. The Court reasoned:

> The statute does not limit its application to cases where workers' compensation payments are made to an employee *for injuries incurred after its effective date,* [i.e.,] *for injuries incurred after March 31, 1982.* Nor does it contain any language indicating that it should *not* be applied when payments are being made *for injuries that occurred prior to March 31, 1982.* The Legislature's failure to do so leaves the section generally applicable to payments made after its effective date. [*Id.* at 651 (emphasis in original).]

In response to *Franks,* the Legislature enacted 1987 PA 28, §§ (17) through (20), overruling this Court's interpretation of § 354.[2] The new legislation prohibited coordination of benefits of *any* person injured before March 31, 1982, the effective date of the coordination provision.

Subsequently, in *Romein,* this Court decided the constitutionality of 1987 PA 28. Defendant General Motors contended that it relied on the § 354 coordination provision between March 31, 1982, and May 14, 1987, the date the Legislature amended § 354. General Motors claimed a vested right to have its liability for those periods determined by the law then in effect.

---

[2] The relevant portion of the amendment states:

> The decision of the Michigan Supreme Court in *Franks v White Pine Copper Div,* 422 Mich 636 (1985), is declared to have been erroneously rendered insofar as it interprets this section, it having been and being the legislative intention not to coordinate payments under this section resulting from liability pursuant to section 351, 361, or 835 for personal injuries occurring before March 31, 1982. It is the purpose of this amendatory act to so affirm. This remedial and curative amendment shall be liberally construed to effectuate this purpose.

The Court concluded that the separation of powers[3] and one court of justice[4] provisions were not violated under the Michigan Constitution.[5] The *Romein* Court, however, conditioned the constitutionality of 1987 PA 28 as follows: "Such retroactive amendments based on prior judicial decisions are constitutional if the statute comports with the requirements of the Contract and Due Process Clauses of the federal and state constitutions, and *so long as the retroactive provisions of the statute do not impair final judgments.*"[6] *Id.* at 537 (emphasis added). The lead opinion improperly dismisses this controlling language as dicta.

---

[3] Const 1963, art 3, § 2 states:

The powers of government are divided into three branches; legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.

[4] Const 1963, art 6, § 1 states:

The judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish by a two-thirds vote of the members elected to and serving in each house.

[5] I disagree with this conclusion, as I previously stated in dissent in *Romein*:

I would hold that the 1987 Legislature ran afoul of the separation of powers and the one court of justice articles of the Michigan Constitution when it gave retroactive effect to 1987 PA 28. [*Id.* at 564.]

I concede, however, that the Court is bound by that decision, particularly the minimal protection carved out by the judgment exception.

[6] The Court made clear no fewer than four times that the due process rights of employers would not be violated only in situations where it would not affect a final judgment. See *id.* at 521, 533, 537, and 540.

Although *Romein* clearly held that workers have no vested rights in the finality of coordinated benefits paid, implicit in the Court's holding is that rights *do* vest for purposes of due process when *judgments* are entered by the WCAB at the direction of an appellate court pursuant to former law. Otherwise, *Romein* would be internally inconsistent because nothing would constitute a final judgment, regardless of the extent to which the parties have litigated the controlling law.

Consequently, there must be a distinction for purposes of finality between the situation in which the WCAB enters its own decision and the situation in the present case in which this Court, relying on its then-recent pronouncement of the law in *Franks*, remanded to the WCAB for entry of judgment. In order to read *Romein* and *Pike v City of Wyoming*, 431 Mich 589; 433 NW2d 768 (1988), consistently, I would distinguish *Pike*. In *Pike*, the lead opinion held that "[b]ecause the amount of an employee's award is never final, res judicata principles do not apply to a change in the amount of benefits the claimant receives." *Id.* at 602. However, the rule announced in that decision, striking the gender-based conclusive presumption of a wife's dependency, was applied without upsetting a previous judgment entered by the WCAB *at the direction of this Court*. This Court had not *previously* upheld the conclusive dependency provision with respect to the worker in *Pike*. That worker merely had a decision by a hearing referee because "there [had been] no appeal," *id.* at 592, when this Court later changed the amount of his benefits to reflect the change in the law announced with that very decision. The lead opinion relies on this dis-

tinction to conclude that the *Romein* exception is merely dicta. I disagree. The lead opinion later more explicitly and honestly states the effect of its decision today, i.e., to overrule rather than disregard the minimal protection the judgment exception established. See *ante*, part VI(A) at 90-92.[7]

As the Court stated in *Romein*, such a judgment exception "protects the vested rights that form in reliance on an award at the moment it is reduced to a final judgment." *Id.* at 533. The employer has a greater expectation of finality after litigation and decision by the appellate courts of this jurisdiction. A decision of the WCAB is less immune to a change in the law than the appellate courts of this state. Accordingly, this language is not dicta, but forms the very basis on which the constitutionality of 1987 PA 28 was conditioned.[8] The lead opinion essentially concedes this point:

---

[7] In other words, I would make the distinction between *Pike* and the present case in which this Court had already ruled on the provision (*Franks*) and ordered the WCAB to enter a judgment consistent with that decision. Such a circumstance should be accorded a greater degree of finality because the litigant, Quinton, relied on the decision of the highest court of the state in contrast to the situation in *Pike* or *Riley v Northland Geriatric Center (After Remand)*, 431 Mich 632; 433 NW2d 787 (1988). This distinction also serves to prevent further erosion of the separation of powers doctrine. See *Romein, supra* (RILEY, J., dissenting).

[8] Moreover, as this Court has previously noted:

"When a court of last resort intentionally takes up, discusses and decides a question *germane* to, though not necessarily decisive of, the controversy, such decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision." [*Detroit v Public Utilities Comm*, 288 Mich 267, 299-300; 286 NW 368 (1939), citing *Chase v American Cartage Co, Inc*, 176 Wis 235, 238; 186 NW 598 (1922) (emphasis in original).]

This Court declared this exception for final judgments because, at the time, we were concerned that a broader order permitting all qualifying claimants to recover improperly coordinated benefits, *regardless of the extent to which they had litigated their claims, might run afoul of either the Michigan or federal constitution.* [*Ante* at 74 (emphasis added).]

Therefore, when this Court previously remanded *Quinton* "for entry of a *judgment* consistent with *Franks*,"[9] General Motors obtained a final judgment within the purview of *Romein* and the award was then "immune from [subsequent] legislative modification." *Romein, supra* at 533.[10] Properly analyzed pursuant to this Court's decision in *Romein*, the decision of the WCAB allowing coordination of Quinton's benefits through the effective date of 1987 PA 28 should be upheld.

II

Although *Romein* is dispositive, the lead opinion engages in an irrelevant discussion of separation of powers. Asserting that it is not controlling, the lead opinion relies on *Plaut, supra. Ante* at 77-78. The lead opinion maintains that consistent with *Plaut*, the legislation now at issue did not "reopen" or "set aside" the 1986 WCAB orders. The lead opinion's characterization is a result-oriented application of those terms from *Plaut*. Once this Court accepts the premise that

---

[9] 424 Mich 884 (1986) (emphasis added).

[10] The WCAB entered an order stating in relevant part:

This cause having come before the Workers' Compensation Appeal Board on remand from the Michigan Supreme Court . . . for entry of a *judgment* consistent with *Chambers* [*supra*] . . . . [Emphasis added.]

an order or judgment entered by the WCAB pursuant to a remand order by this Court is an order implicating the doctrine of separation of powers, as the lead opinion properly does, it is immediately apparent that the 1987 legislation is an intrusion on the judiciary. The threat to the independence of the judiciary is increased with the lead opinion's holding today.[11] Not only has the Court violated the fundamental principle that "the proper construction of a statute is a judicial function,"[12] but it now continues the assault by allowing a judgment entered by the WCAB at the direction of this Court to be set aside. In total disregard for even the minimal protection established by *Romein*, the lead opinion characterizes the legislation as "modifying the operative effect of a prior judgment or order" that evidently "can be accomplished without reopening or setting aside a judgment entered by a court." *Ante* at 84. I disagree.

To say that the 1987 legislation "simply requires payment to all in Quinton's class an uncoordinated benefit from and after March 31, 1982," *id.* at 85, is the unquestionable equivalent of setting aside a previous determination by this Court. This Court allowed coordination of benefits for all injuries occurring before March 31, 1982, and the Legislature *explicitly*

---

[11] As I previously stated in *Romein, supra* at 563:

It is necessary to have an equally powerful judicial branch of government in order to ensure that the balance of power is not weighted in favor of the Legislature, and to ensure that individual rights are not circumvented by the will of the majority. Therefore, in order for this Court to maintain its equal position with our tripartite system of government, we must secure our constitutionally granted authority.

[12] *Webster v Rotary Electric Steel Co*, 321 Mich 526, 531; 33 NW2d 69 (1948).

set aside that holding and ruled that there could be no coordination for persons injured before that date: "The decision of the Michigan Supreme Court in *Franks v White Pine Copper Div*, 422 Mich 636 (1985) is declared to have been *erroneously rendered* insofar as it interprets this section . . . ." MCL 418.354(17); MSA 17.237(354)(17) (emphasis added). No clearer example of setting aside a judgment or order of a court is imaginable.

III

The parties disagree whether the WCAB has the authority to enter a "judgment" and, if so, whether a judgment was entered. In doing so, the parties elevate form over substance. Irrespective of the language the Court used to establish the *Romein* exception and the language previously used in its remand order in the present case, it is clear that both refer to the same action of the WCAB (entering an order at the direction of an appellate court) that finally determined the rights of the parties with respect to coordinating benefits upon entry of a final judgment.

Moreover, plaintiffs' argument that "judgment" in the context of *Romein* means judicial enforcement by a circuit court pursuant to MCL 418.863; MSA 17.237(863) rather than entry of an order at the direction of an appellate court is absurd.[13] The purpose of

---

[13] It should be noted that this Court routinely refers to decisions of the WCAB as judgments. See *Clayton v Vickers, Inc*, 447 Mich 851 (1994), in which the Court "[i]n lieu of granting leave to appeal, [vacated] the *judgment* of the Worker's Compensation Appellate Commission"; *Poling v Merillat Industries*, 446 Mich 852 (1994), in which the Court stated "[i]n lieu of granting leave to appeal, the *judgment* of the Worker's Compensation Appellate Commission is vacated, and the case is remanded to the WCAC for reconsideration"; *Luke v Michigan*, 446 Mich 851 (1994), in which the Court again vacated "the *judgment* of the Worker's Compensa-

§ 863 is to protect the interests of persons awarded worker's compensation by providing them with prompt enforcement by a circuit court in situations in which the employer fails to pay an award. See *Wyrybkowski v Cobra Pre-Hung Doors, Inc*, 66 Mich App 555; 239 NW2d 660 (1976). A circuit court judgment is merely entered " 'in accordance' with the award, which means that it should *recite* and *follow* the award, which furnishes the data for further action of the court." *Brown v George A Fuller Co*, 193 Mich 214, 219; 159 NW 376 (1916) (emphasis added). Therefore, the primary purpose of entering a judgment in circuit court is to ensure satisfaction of the worker's compensation award. It cannot fairly be said that a judgment by a circuit court produces a more final decision for purposes of res judicata after judgment is entered by the WCAB at the direction of an appellate court.

IV

This Court remanded Quinton's earlier petition for entry of a "judgment" consistent with *Franks*. The WCAB responded by entering a judgment that is properly understood as fulfilling the Supreme Court's remand order and falls squarely within the judgment exception established by *Romein*. Therefore, the decision of the WCAB should be affirmed.

BRICKLEY, C.J., concurred with RILEY, J.

WEAVER, J., took no part in the decision of this case.

---

tion Appellate Commission"; *Scott v VandeBunte Egg Co*, 433 Mich 870 (1989), in which the Court reinstated "the *judgment* of the Workers' Compensation Appeal Board . . . ."