**HYUNDAI MERCHANT MARINE CO. LTD., Pohang Iron and Steel Co., Ltd., The Oriental Fire & Marine Insurance Co., Ltd., The Shin Dong–A Fire & Marine Insurance Co., Ltd., Daehan Fire, Marine Insurance Co., Ltd., International Fire & Marine Insurance Co., Ltd., Koryo Fire & Marine Insurance Co., Ltd., First Fire & Marine Insurance Co., Ltd., Haedong Fire & Marine Insurance Co., Ltd., The Ankuk Fire & Marine Insurance Co., Ltd., Hyundai Marine & Fire Insurance Co., Ltd., Lucky Insurance Co., Ltd., Korea Automobile Fire & Marine Insurance Co., Ltd., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 89 Civ. 2025 (PKL).**

United States District Court,
S.D. New York.

May 31, 1995.

---

See also, 1994 WL 524999.

Healy & Baillie, New York City (Richard V. Singelton, II, of counsel, Todd Kenyon, of counsel), for plaintiffs.

Mary Jo White, U.S. Atty. for the S.D.N.Y., New York City, Frank W. Hunger, Torts Branch, Civ. Div., U.S. Dept. of Justice, New York City (Janis G. Schulmeisters, of counsel, Jack S. Rockafellow, of counsel), for U.S.

LEISURE, District Judge:

This is an action under the Suits in Admiralty Act, 46 U.S.C. app. §§ 741–52, by the owners of the Hyundai New World and parties related in interest (collectively, "plaintiffs") against the United States of America (the "Government"). Plaintiffs allege that the Hyundai New World ran aground off the coast of Brazil in 1987 as a result of the negligent publication and failure to update an inaccurate nautical chart by the Defense Mapping Agency (the "DMA"), an agency within the Department of Defense. The Government has moved to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

## BACKGROUND

On October 5, 1994, 10 U.S.C. § 2798 ("Section 2798") was signed into law. Soon after Section 2798 was enacted, on November 7, 1994, the Government filed a motion to dismiss the instant action for lack of subject matter jurisdiction. It is well established that, in considering a motion to dismiss for want of subject matter jurisdiction, the Court must accept as true all material factual allegations in the complaint. *See, e.g., Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992).

Applying the above standard, the facts of this case are as follows. On March 31, 1987, the Hyundai New World grounded on a shoal as it sought to enter the Baia de Sao Marcos in Brazil resulting in the total loss of the vessel. In entering the Baia de Sao Marcos, the master of the Hyundai New World used DMA Chart 24271 (13th Ed.) ("Chart 24271") which did not accurately indicate the position of this shoal. Chart 24271 was published on April 23, 1983. The Chart states that it is a reproduction of Brazilian Chart 411 (2d Ed.), a chart produced by the Brazilian government based on surveys by the Brazilian Navy to 1974.[1] In addition to producing Chart 24271 and other charts, the Defense Mapping Agency Hydrographic/Topographic Center ("DMAHTC") publishes weekly Notices to Mariners which serve to update existing charts with new hydrographic information.

In 1984, the Brazilian government performed new hydrographic surveys in the Baia de Sao Marcos. These hydrographic surveys indicated that the shoal on which the Hyundai New World later foundered had extended northward and eastward. As a result, water depths were now 14 to 17 meters in areas where they were indicated as 25 to 38 meters on Chart 24271. Prior to the grounding of the Hyundai New World, the DMAHTC received charts from the Brazilian government and notices from the British government which indicated these reduced water depths. The DMAHTC did not publish a Notice to Mariners conveying this information prior to the grounding of the Hyundai New World.

1. The parties dispute what sources were in fact used in preparing Chart 24271.

## DISCUSSION

A. *Applicability of § 2798*

Section 2798 provides, in pertinent part:

(a) Claims Barred—No civil action may be brought against the United States on the basis of the *content* of a navigational aid prepared or disseminated by the Defense Mapping Agency.

(b) Navigational Aids Covered—Subsection (a) applies with respect to a navigational aid in the form of a map, a chart, or a publication and any other form or medium of product or information in which the Defense Mapping Agency prepares or disseminates navigational aids.

10 U.S.C. § 2798 (emphasis added).

(d) Effective Date—Section 2798 of title 10, United States Code, as added by subsection (b), shall take effect on the date of the enactment of this Act and shall apply with respect to (1) civil actions brought before such date that are pending adjudication on such date, and civil actions brought on or after such date.

This provision became effective on October 5, 1994. P.L. 103–337, § 1074(d).

The Government contends that as a result of the recent enactment of Section 2798, this Court no longer has jurisdiction over the tort claims against the United States alleged in plaintiffs' complaint. *See* Memorandum of Defendant United States in Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim by Reason of Newly Passed Statute ("Defendant Mem.") at 3. The Government claims that, in enacting § 2798, Congress clarified that the United States has not, and had not, waived sovereign immunity with respect to lawsuits based upon the content of Defense Mapping Agency maps, charts and other publications, and that Congress specifically provided for the statute's retroactive effect.

The Government quotes Senator Nunn as saying:

Certain DMA mapping, charting and geodesy (MC & G) nautical and aeronautical products are needed and used by the general public. DMA accommodates this need through an extensive public sale program. It is crucial that end users rely on the most current and accurate products available to assure safety of navigation....

Section 923 amends Chapter 147 of title 10, United States Code, by adding a new section to grant the Defense Mapping Agency an express exemption from liability associated with the preparation or dissemination of its products, in whatever form. This language would make clear that the activities of the Defense Mapping Agency in the preparation and production of maps, charts, aids to navigation, publications, products and information are expressly exempt from any claim or action....

Since DMA cannot independently verify all the information supplied by foreign sources it is unreasonable to subject the United States to unlimited liability in the production and distribution of these many products.

For example, in the case of Hyundai Merchant Marine Co., Ltd., et al. v. United States, the HYUNDAI NEW WORLD, a 200,000 deadweight ton bulk cargo carrier, stranded in the Bay of Sao Marcos, Brazil, on 31 March 1987, resulting in a total loss of ship and cargo. The ship owner, cargo owners and underwriters of same, sued the United States for negligence alleging that the navigators of HYUNDAI NEW WORLD were using DMA chart 271 [sic] (A DMA facsimile of a Brazilian chart) containing errors and omissions which were the cause of the stranding. The potential damages to date are estimated at $60 million.

The proposed statutory language would make it clear that the activities of the Defense Mapping Agency in the preparation and production of maps, charts, aids to navigation, publications, products and information, in whatever form, primarily for use of U.S. warfighters, are expressly exempt from any claim or cause of action.

140 Cong.Rec. S5049–03, S5065.

It has also been reported:

The second provision would make it clear that the United States has not waived sovereign immunity with respect to lawsuits based upon the content of DMA maps and charts. Claims against DMA are prohibit-

ed under the Federal Torts Claims Act, but an issue has arisen as to whether the Suits in Admiralty Act (46 U.S.C. 741 et seq.) provides an independent jurisdictional basis for lawsuits against DMA. The provision recommended by the committee would make it clear that the government has not waived sovereign immunity with respect to claims based upon allegations concerning the content of DMA maps and charts.

103 S.Rept. 282, 103d Cong., 2d Sess. ("Senate Report") at p. 231–32 (1994).

Finally, the House report states:

The Senate bill contained provision (sec. 1064) that would affect the Defense Mapping Agency (DMA) in two ways.... Second, it would clarify that the United States has not waived sovereign immunity with respect to lawsuits based upon the content of DMA maps and charts.

103 H.Conf.Rep. No. 701, 103d Cong., 2d Sess. ("House Report") at p. 204–05, 749 (1994). U.S.Code Cong. & Admin.News 1994, pp. 2091, 2330.

Plaintiffs contend that § 2798 does not immunize the Government for the conduct at issue in this case. Plaintiffs make a semantic argument that the statute was not intended to immunize the Government for negligent failures to act, but only for suits based on the *content* of navigational aids. Plaintiffs maintain that § 2798 does not release the Government for its failure to issue corrective notices or to warn that Chart 24271 was no longer reliable.

■ In sum, plaintiffs argue that they do not dispute the accuracy of Chart 24271 when prepared and disseminated by the DMA, but that they find fault with the Government's negligent failure to update the Chart. This Court is unpersuaded by plaintiffs' argument.[2] The words of the statute are clear, and the intent of Congress in enacting § 2798 is apparent.[3] Congress specifically intended to immunize the DMA from suits that resulted from damages that eventuated as a consequence of reliance on maps and charts furnished by the DMA. Such protection was intended to shield the DMA irrespective of whether the damage resulted from a chart that was incorrect as an initial matter, or from a chart that became incorrect as a consequence of the DMA's failure to update it.[4]

---

**2.** Plaintiffs' principal point is that their claims are not covered by § 2798 because they are not based on the *content* of a navigation aid prepared by the DMA. Rather, their claims are based on failure to correct navigational aids. The Court is unconvinced. At heart, plaintiffs' contention is that the Hyundai New World was damaged as a result of the inaccurate information *contained* in Chart 24271. This is true regardless of whether the Chart was incorrect at inception or at some other moment. The fact remains that plaintiff has no claim if it was not harmed as a result of the inaccurate *content* of a chart prepared by the DMA.

**3.** In construing statutes, the court's task is to "give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Negonsott v. Samuels*, —— U.S. ——, —————, 113 S.Ct. 1119, 1122–23, 122 L.Ed.2d 457 (1993) (citations omitted).

**4.** This Court also finds plaintiffs' argument concerning the legislative history of § 2798 to be unpersuasive in light of the clear language of § 2798 and the apparent intent of Congress in its enactment of that statute. Equally unavailing is plaintiffs' contention that their claim is not barred by § 2798 because it would be actionable if brought under the Federal Torts Claims Act. *See* Senate Report at p. 231–32 ("Claims against DMA are prohibited under the Federal Torts Claims Act ... The provision recommended by the Committee would make it clear that the Government has not waived sovereign immunity with respect to claims based upon allegations concerning the content of DMA maps and charts.")

This Court further notes the inconsistency between plaintiffs' argument, addressed in the next section of this opinion, that Congress' enactment of § 2798 violates the separation of powers doctrine because the statute was passed in specific contemplation of the instant action, and plaintiffs' present argument, that § 2798 does not encompass the instant action. *See, e.g.,* Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss ("Plaintiff Mem.") at 23 ("[t]he retroactive provision of § 2798 is aimed directly at this case ... The sole effect of the retroactive provision of § 2798 is therefore to affect the rule of decision in this case on the precise jurisdictional and immunity issue that was raised [in front of this Court].... It is difficult to conceive of a clearer instance of Congress affecting the rule of decision in pending litigation").

■ The United States may not be sued except as it has consented to be sued. *See Dalehite v. United States,* 346 U.S. 15, 30, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953). Where sovereign immunity exists, subject matter jurisdiction is absent. *See United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976). In addition, any waiver of sovereign immunity must be strictly construed in favor of the sovereign. *See United States v. Sherwood,* 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941).

Accordingly, because this Court finds that § 2798 prevents the DMA from being sued for the content of its products and that § 2798 has retroactive application and applies to pending actions, it concludes that § 2798 immunizes the Government from an action stemming from the alleged negligent conduct that lies at the heart of the instant action.

### B. *Separation of Powers*

■ "It is axiomatic that 'within our political scheme, the separation of governmental powers into three coordinate Branches is essential to the preservation of liberty." *Rabin v. Fivzar Associates,* 801 F.Supp. 1045, 1051–52 (S.D.N.Y.1992) (Sweet, J.) (quoting *Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). "Under this system, the legislature is to enact laws of general application and the courts are to decide particular cases arising under those laws and to exercise the exclusive authority to say what the law is." *Id.* at 1052 (citations omitted). "Conversely stated, the judicial power cannot legislate, nor can the legislative power act judicially." *Id.* (citations omitted). A violation of the separation of powers doctrine occurs when Congress enacts legislation that prescribes a rule of decision to the judicial branch in cases pending before it without changing the underlying substantive or procedural law. *See United States v. Sioux Nation of Indians,* 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980). The separation

of powers doctrine is also violated when Congress enacts a statute which requires federal courts to reopen final judgments entered before the statute's enactment. *See Plaut v. Spendthrift,* —— U.S. ——, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995).

#### 1. *Prescribing a Rule of Decision*

Plaintiffs contend that the application of Section 2798 to the instant case would violate the Constitution under the separation of powers principle. They argue that Section 2798 comprises a Congressional attempt to alter the rule of decision in a pending case in favor of the Government, and that such an attempt is prohibited by the Constitution. Plaintiff Mem. at 6–7. Plaintiffs maintain that cases such as *United States v. Klein,* 80 U.S. (13 Wall) 128, 20 L.Ed. 519 (1872) and *United States v. Sioux Nation of Indians,* 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980) establish that a statute passed by Congress, which prescribes a rule of decision in a case pending before the courts and which does so in a manner that requires the courts to decide a controversy in the Government's favor, is unconstitutional.

Plaintiffs note that "[w]here acts of the Legislative Branch prevent the Judicial Branch from accomplishing its constitutionally assigned functions, Congress 'passes over the limit which separates the legislative from the judicial power.'" *Rabin,* 801 F.Supp. at 1052 (quoting *Sioux Nation,* 448 U.S. at 391, 100 S.Ct. at 2729); *see also Plaut,* —— U.S. at ——, 115 S.Ct. 1447. Plaintiffs assert that, in enacting § 2798, Congress has impermissibly sought to affect the rule of decision in the instant action in a manner that requires a decision in the Government's favor. They argue that "[t]he retroactive provision of § 2798 is aimed directly at this case." Plaintiff Mem. at 23. Plaintiffs contend that the provision is effectively an appellate reversal of this Court's September 26, 1994 decision.[5]

---

5. In an opinion and order, issued on September 26, 1994, this Court found that the discretionary function exception, 28 U.S.C. § 2680(a), did not eliminate this Court's subject matter jurisdiction. The Court determined that the discretionary function exception to the Government's waiver of

sovereign immunity, pursuant to the Suits in Admiralty Act, did not preclude this Court from exercising subject matter jurisdiction in the instant matter. This Court found the exception inapplicable because the DMA did not have a policy of not updating facsimile charts, and the

Plaintiffs further argue that although "*Klein* does not preclude Congress from changing the law applicable to pending cases," *Axel Johnson Inc. v. Arthur Andersen & Co.*, 6 F.3d 78, 81 (2d Cir.1993), it does preclude Congress from compelling results under old law, *Robertson v. Seattle Audubon Society*, 503 U.S. 429, ——, 112 S.Ct. 1407, 1413, 118 L.Ed.2d 73 (1992). Plaintiffs assert that § 2798 does not amend or change the Suits in Admiralty Act, but rather "clarifies" it. As a consequence, plaintiffs maintain, § 2798 is merely Congress' interpretation of how it believes maritime claims against the United States based on the activities of the DMA, under the Suits in Admiralty Act, should be decided. Plaintiffs maintain that the enactment of § 2798 is an unconstitutional legislative attempt to compel findings under old law, rather than an attempt to create new law.[6]

■ As the Supreme Court stated in *Seattle Audubon*, however, when Congress compels "changes in law, not findings or results under old law" it acts within its constitutional authority. *See Seattle Audubon*, 503 U.S. at ——, 112 S.Ct. at 1413.[7] As in *Seattle Audubon*, the Court finds nothing in the relevant statute in this case, § 2798, that "purport[s] to direct any particular findings of fact or applications of law, old or new, to fact." *Id.* "[U]nlike the provision at issue in *Klein*, and like the statute at issue in [*Seattle Audubon* ], [§ 2798] does not directly interfere with judicial fact-finding." *Cf. Axel Johnson*, 6 F.3d at 82. Rather, § 2798 specifies the law to be applied to the relevant cases and leaves to the courts the job of applying that law to the particular facts before them. *Cf. Rabin*, 801 F.Supp. at 1054. "Under [*Seattle Audubon*,] ... a law will not be found to be unconstitutional even where it may effect the outcome of a case, unless it directs particular findings." *Brown v. Hutton Group*, 795 F.Supp. 1307, 1314 (S.D.N.Y. 1992). Section 2798 does not direct particular findings.

In sum, Congress has unconstitutionally exceeded its permitted role if it has instructed the courts to make specific findings of fact or directed results under old law, but Congress has not done so in the instant situation. Section 2798 does not direct courts to make a specific factual finding or to apply a specific rule of decision to cases before them. Congress has not instructed the courts to reach a particular decision on the merits of any claim. Accordingly, this Court finds that § 2798 should not be found unconstitutional for prescribing a rule of decision.

2. *Reopening Final Judgments*

The Second Circuit has stated, "so long as the claims, if they were purely statutory, had not ripened into final judgment, regardless of whether the activities on which they were based had been performed, they were subject to whatever action Congress might take with respect to them." *Battaglia v. General Motors Corp.*, 169 F.2d 254, 259 (2d Cir.1948). More recently, the Supreme Court has held that, "[w]hen retroactive legislation requires its own application in a case already *finally*

---

Court was provided with no evidence that the failure to update Chart 24271 had anything to do with military, geopolitical, or economic considerations. In sum, this Court found that decisions concerning when a chart needed to be updated were technical rather than discretionary.

6. This Court notes that "the characteristics of an impermissible act of legislative law-*interpreting* as contrasted to those of permissible legislative law*making* have yet to be defined." *Rabin*, 801 F.Supp. at 1052 (emphasis in original). The Court observes, however, that if § 2798 merely clarified existing law, then the Government never waived its sovereign immunity, and plaintiffs have no viable claim. If, however, § 2798 modified existing law, and Congress used § 2798 to revoke its prior waiver, then plaintiffs' instant separation of powers argument is not feasible.

Congress is authorized to revise laws. *See Seattle Audubon*, 503 U.S. at ——, 112 S.Ct. at 1413 (Congress may modify old laws even though some claims that would have been successful will now fail); *Axel Johnson*, 6 F.3d at 81 ("[t]he rule of *Klein* precludes Congress from usurping the adjudicative function assigned to the federal courts under Article III. However, *Klein* does not preclude Congress from changing the law applicable to pending cases.")

7. The Second Circuit, in summarizing *Seattle Audubon*, has stated that a "statute may permissibly affect the outcome of a case, but may not direct findings of fact." *Litton Indus. v. Lehman Brothers Kuhn Loeb, Inc.*, 967 F.2d 742, 751–52 n. 6 (2nd Cir.1992).

*adjudicated,* ... such an act exceeds the powers of Congress," *Plaut,* —— U.S. at ——, 115 S.Ct. at 1456 (emphasis added).[8]

> [T]he decision of an inferior court is not (unless the time for appeal has expired) the final word of the department as a whole. It is the obligation of the last court in the hierarchy that rules on the case to give effect to Congress's latest enactment, even when that has the effect of overturning the judgment of an inferior court, since each court, at every level, must decide according to existing laws. Having achieved finality, however, a judicial decision becomes the last word of the judicial department with regard to a case or controversy, and Congress may not declare by retroactive legislation that the law applicable *to that very case* was something other than what the courts said it was.

*Plaut,* —— U.S. at ——, 115 S.Ct. at 1457 (citations omitted) (emphasis in original).[9]

■ This Court notes that there has been no final judgment in the instant action. This Court's opinion, dated September 26, 1994, determined that the discretionary function exception to the Suits in Admiralty Act did not preclude the instant suit, but § 2798 is not related to that ruling.[10] Section 2798 presents a jurisdictional bar to suits like the instant one irrespective of whether or not the discretionary function exception applies to the conduct of DMA officials.

*Klein* does not change the fact that courts are obligated to apply the law as they find it at the time of final judgment. *See American International Group, Inc. v. Islamic Republic of Iran,* 657 F.2d 430, 442 (D.C.Cir.1981). The Supreme Court has made clear in *Plaut* that it is the obligation of the court to give effect to Congress' pronouncements until such time as judicial rulings have achieved finality. There has been no final ruling as regards the Government's sovereign immunity from all liability with respect to lawsuits based upon the content of Defense Mapping Agency maps, charts and other publications.[11] Consequently, in deciding the Government's instant motion, this Court must apply the law as it currently exists. The fact that Congress recently modified that law, perhaps in direct contemplation of the instant action,[12] does not constitute an unconstitutional abrogation of the separation of powers. Accordingly, this Court finds that § 2798 should not be found unconstitutional for impermissibly reopening a final judgment.

### 3. Conclusion

For the reasons stated above, this Court finds that § 2798 does not unconstitutionally violate the separation of powers doctrine.

---

8. The Supreme Court definitively states, "Congress can always revise the judgments of Article III courts in one sense: When a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly." *Plaut,* —— U.S. at ——, 115 S.Ct. at 1457.

9. The Court goes on to say:
 The separation-of-powers violation here, if there is any, consists of depriving judicial judgments of the conclusive effect that they had when they were announced, not of acting in a manner—viz., with particular rather than general effect—that is unusual (though, we must note, not impossible) for a legislature.... Not favoritism, nor even corruption, but *power* is the object of the separation-of-powers prohibition. The prohibition is violated when an individual final judgment is legislatively rescinded for even the very best of reasons ...
 *Plaut,* —— U.S. at ——, 115 S.Ct. at 1457 (emphasis in original).

10. Defendant notes that although the bill containing § 2798 was not signed into law by the President until October 5, 1994, both houses of Congress passed the legislation prior to this Court's decision. Therefore, Congress, at least, was not specifically attempting to overrule a decision of this Court.

11. As previously noted, on September 26, 1994, this Court ruled on the narrow issue of whether it lacked subject matter jurisdiction pursuant to the discretionary function exception to the Government's waiver of sovereign immunity in the Suits in Admiralty Act. This Court merely found that such exception did not eliminate the Court's jurisdiction.

12. The Government readily admits that Congress had the instant case in mind when it considered the new bill. The Government even cites to the section of the Congressional Record where the instant action is used as an example. *See* Defendant Mem. at 5; Defendant's Reply to Plaintiffs' Memorandum in Opposition ("Defendant Reply") at 6.

## C. *Due Process*

■ Plaintiffs also argue that § 2798 violates Fifth Amendment due process. Under the "vested rights" doctrine, the legislature may not, consistent with Article III and the Fifth Amendment, direct the reversal or suspension of a decision of a federal court, or take away rights which have been once vested by judgment. *See Rabin,* 801 F.Supp. at 1055. "[R]ights fixed by judgment are, in essence, a form of property over which legislatures have no greater power than any other [property]." *Axel Johnson,* 6 F.3d at 83 (citations omitted). A cause of action, however, "is inchoate and affords no definite or enforceable property right until reduced to final judgment." *Konizeski v. Livermore Labs,* 820 F.2d 982, 989 (9th Cir.1987).

■ This Court's opinion, dated September 26, 1994, determined that the discretionary function exception to the Suits in Admiralty Act did not preclude the instant suit, but it did not create any rights for Hyundai. In addition to there having been no final judgment,[13] Hyundai was simply not granted any rights by this Court's earlier decision.

■ Furthermore, an "act of Congress comes to us clothed with a presumption of constitutionality, and the burden is on the plaintiff to show that it violates due process." *Konizeski,* 820 F.2d at 990. To comport with the requirements of due process, the retroactive application of a statute must be supported by a legitimate legislative purpose furthered by a rational means. *Id.* at 991; *see also United States v. Carlton,* —— U.S. ——, ——, 114 S.Ct. 2018, 2022, 129 L.Ed.2d 22 (1994).

Plaintiffs contend that the retroactive application of § 2798 is unconstitutional. Plaintiffs argue that they relied on the clear waiver of immunity contained in the Suits in Admiralty Act in pursuing the instant action. They assert that the effect of retroactively applying § 2798 is the impermissible targeting of the instant lawsuit. Plaintiffs conclude that the effect of Congress' action is particularly harsh and oppressive, and is so unfair and inequitable as to be unconstitutional.

■ The Court notes that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way. *See Konizeski,* 820 F.2d at 990. The Court finds that plaintiffs have not met their burden of showing that § 2798 is wholly arbitrary and irrational in purpose and effect and that it is not related to a legitimate congressional purpose. *Id.* at 990. The reasons asserted by the Government for Congress' enactment of § 2798 are neither arbitrary nor irrational. This Court finds that § 2798 had a legitimate legislative purpose which was furthered by rational means. This Court further finds that the retroactive application of § 2798 is neither so oppressive nor so inequitable as to render such application unconstitutional.

### CONCLUSION

For the reasons stated above, the Court grants defendant's motion to dismiss, and this action is dismissed in its entirety.

**SO ORDERED.**

---

**13.** *Cf. Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 310–16, 65 S.Ct. 1137, 1140–43, 89 L.Ed. 1628 (1945) (where defendant's "statutory immunity from suit had [not] been fully adjudged so that legislative action deprived it of a final judgment in its favor" due process not violated by restoration of remedy to plaintiff). "[A] case remains 'pending,' and open to legislative alteration, so long as an appeal is pending or the time for filing an appeal has yet to lapse. *See Axel Johnson,* 6 F.3d at 84.