MAYOR OF DETROIT v ARMS TECHNOLOGY, INC
WAYNE COUNTY EXECUTIVE v ARMS TECHNOLOGY, INC

Docket Nos. 227669, 227685, 227686, 227687, 228710, 233688, 233689, 233906, 234263, 234359, 234567. Submitted November 19, 2002, at Detroit. Decided August 7, 2003, at 9:10 A.M

The Mayor of the city of Detroit and the city of Detroit and the Wayne County Executive, Wayne County, and others brought separate actions in the Wayne Circuit Court against Arms Technology, Inc., and other manufacturers, distributors, and retailers of legal firearms, alleging that the methods used by the defendants to market and distribute firearms constitute concerted, intentional, reckless, and negligent conduct that rises to the level of a public nuisance. The plaintiffs sought damages for public nuisance and negligence relating to the loss of life, serious injury, law enforcement expenses, and emergency response costs resulting from the defendants' conduct. The court, Jeanne Stempien, J., consolidated the actions, granted summary disposition in favor of the defendants with regard to the plaintiffs' negligence claims, and denied summary disposition in favor of the defendants with regard to the public nuisance claims. The court rejected the defendants' argument that MCL 123.1102, which prohibits local regulation of firearms, bars the plaintiffs' claims. The Court of Appeals held in abeyance applications for leave to appeal from that order. The trial court then considered the defendants' second motion for summary disposition and held that 2000 PA 265, effective June 29, 2000 (now MCL 28.435), is unconstitutional. That statute prevents political subdivisions from bringing civil actions against producers of firearms. Certain of the defendants appealed by leave granted from the orders denying both motions, except with regard to the negligence claims. The appeals were consolidated.

The Court of Appeals *held*:

1. The plaintiff political subdivisions lack standing to assert that they have been deprived of due process of law. A political subdivision has only those rights granted to it by the Legislature. The Legislature has not conferred standing here and none of the exceptions to the general rule apply to this matter.

2. The plaintiffs cannot show that the enactment of MCL 28.435 violates the separation of powers provision of the Constitution, Const 1963, art 3, § 2, on the basis that the statute was enacted after the trial court ruled on the applicability of MCL 123.1102. The separation of powers principles found in the Constitution are not violated by MCL 28.435.

3. 2000 PA 265 does not violate the Title-Object Clause, Const 1963, art 4, § 24. The challenged sections of the act are not so diverse in nature and so devoid of necessary connection that the act should be invalidated as embracing more than one object, and the title of the act gives fair notice of the challenged provisions. The orders of the trial court must be reversed and the matter must be remanded to the trial court for entry of a judgment in favor of the defendants.

Reversed and remanded.

1. CONSTITUTIONAL LAW — FIREARMS MANUFACTURERS — CIVIL ACTIONS — POLITICAL SUBDIVISIONS.

The provisions of MCL 28.435 that, with certain exceptions, prevent a political subdivision from bringing a civil action against any person who produces a firearm or ammunition, and which provisions apply to a civil action pending on the effective date of the act, do not violate the Separation of Powers Clause or the Title-Object Clause of the Michigan Constitution (Const 1963, art 3, § 2, art 4, § 24).

2. CONSTITUTIONAL LAW — POLITICAL SUBDIVISIONS.

Political subdivisions have only those rights granted to them by the Legislature and do not have standing to challenge on equal protection or due process grounds the constitutionality of a statutory provision enacted by the Legislature.

*Charfoos & Christensen, P.C.* (by *David W. Christensen, Samuel L. Simpson,* and *David R. Parker*), for the Mayor of the city of Detroit and others.

*Cox & Weiner* (by *Cy V. Weiner* and *Elizabeth C. Thompson*) for the Wayne County Executive.

Brady Center to Prevent Gun Violence (by *Dennis Henigan, Brian J. Siebel,* and *Allen K. Rostron*) for the plaintiffs.

*Kitch Drutchas Wagner Denardis & Valitutti* (by *Susan Healy Zitterman* and *John Paul Hessburg*) (*Renzulli & Rutherford, LLP*, by *John Renzulli* and *Christopher Renzulli*, of counsel) (*Friday, Eldredge & Clark*, by *William M. Griffin, III*, of counsel) (*Budd, Larner, Gross, Rosenbaum, Greenberg & Sade*, by *Timothy A. Bumann*, of counsel) (*Timothy G. Atwood*, of counsel) for Arms Technology, Inc., Browning Arms Co., Glock, Inc., H & R 1871, Inc., Hi-Point Firearms, Kel-Tec CNC Industries, Inc., O. F. Mossberg & Sons, Inc., Taurus Manufacturing, Inc., and International Armament Corp.

*Jaffe, Raitt, Heuer & Weiss* (by *R. Christopher Cataldo*) (*Wildman, Harrold, Allen & Dixon*, by *James P. Dorr, James Vogts*, and *Sarah Olson*, of counsel) for Sturm Ruger & Co., Inc.

*Feikens, Stevens, Kennedy, Hurley & Galbraith, P.C.* (by *Jon Feikens*) (*Jones, Day, Reavis & Pogue*, by *Thomas Fennell* and *Michael L. Rice*, of counsel), for Colt's Manufacturing Company, Inc.

*Rutledge, Manion, Rabaut, Terry & Thomas, P.C.* (by *Alvin A. Rutledge*) (*Gordon, Feinblatt, Rothman, Hoffberger & Hollander, L.L.C.*, by *Lawrence Greenwald*, of counsel), for Beretta USA Corp.

*Secrest, Wardle, Lynch, Hampton, Truex & Morley* (by *Robert B. Holt, Jr.*) (*Bruinsma & Hewitt*, by *Michael S. Hewitt*, of counsel) (*Tarics & Carrington, P.C.*, by *Michael Branisa* and *Michael Zomcik*, of counsel) for Bryco Arms, Phoenix Arms, and B. L. Jennings, Inc.

*Martin, Bacon & Martin, P.C.* (by *Jonathan E. Martin*) (*Shook, Hardy & Bacon, L.L.P.*, by *Jeffrey S. Nelson*, of counsel), for Smith & Wesson Corp.

*Mantese Miller and Mantese, P.L.L.C.* (by *Gerard Mantese, E. Powell Miller*, and *Ann L. Miller*), for MKS Supply, Inc.

*Dipietro & Day, P.C.* (by *Thomas K. Dipietro*), for Alexander's Sport Shop, Inc.

Before: HOEKSTRA, P.J., and WILDER and ZAHRA, JJ.

PER CURIAM. In these consolidated appeals, defendants appeal by leave granted the trial court's decision denying their motions for summary disposition based on MCR 2.116(C)(8). We reverse.

### I. FACTS AND PROCEEDINGS

The political subdivision plaintiffs in this case are among the numerous political subdivisions nationwide that have filed suit against firearms manufacturers, distributors, and retailers such as defendants, articulating theories under which defendants would be held liable as contributors to the level of gun violence experienced in their communities. While the cases in other jurisdictions lend some perspective to the issues raised, our focus is, and must be, whether plaintiffs' claims are viable under Michigan law.

In April 1999, plaintiffs Wayne County Executive, Wayne County and others and the mayor of the city of Detroit and the city of Detroit filed separate complaints against manufacturers, distributors, and retailers of legal firearms, alleging that the methods used by defendants to market and distribute firearms con-

stitute concerted, intentional, reckless, and negligent conduct that rises to the level of a public nuisance. Plaintiffs seek damages for public nuisance and negligence against defendants, alleging that defendants "have knowingly and deliberately, and for their own financial benefit, marketed and distributed guns in a manner that foreseeably injures" plaintiffs, their citizens, and their employees (the county did not claim injury to its employees). Plaintiffs allege that defendants' conduct, described as a "careful strategy which couples manufacturing decisions, marketing schemes, and distribution patterns with a carefully constructed veil of deniability regarding particular point-of-sale transactions," has "imposed . . . ongoing and permanent harm" on each plaintiff in the form of loss of life, serious injury, law enforcement expenses, and emergency response costs. Plaintiffs further allege that defendants' conduct interferes significantly with the public health, safety, and welfare, and is "conduct which Defendants knew or should have known to be of a continuous and long-lasting nature that produces permanent and significant adverse effects," thus creating a public nuisance. Plaintiffs also assert that defendants have violated their duty not to impose an unreasonable risk of foreseeable harm and have proximately caused harm. Accordingly, plaintiffs contend that defendants' conduct also constitutes actionable negligence.

Plaintiffs allege that defendants rely on the diversion of guns from legitimate purchasers to an illegitimate secondary market through "straw" purchases,[1]

---

[1] A "straw" purchase, according to plaintiffs, is one where a "[qualified] purchaser buys the gun from a licensed dealer for a person who is not qualified to purchase the firearm under federal and state regulations, such

multiple sales,[2] sales to "kitchen table" dealers,[3] and sales to corrupt dealers, and that defendants could reduce the flow of weapons to the secondary market by monitoring and guiding dealers and by limiting shipments to dealers who defendants know supply weapons to illegal purchasers. Rather than employing such measures, plaintiffs allege, defendants, with knowledge of the ease with which one can become a federally licensed firearms dealer, engage in "willful blindness" that results in profit for defendants. Plaintiffs quote Robert Haas, former senior vice-president of marketing and sales for defendant Smith and Wesson Corp., as stating that the manufacturers are aware of the funneling of their products into the illegal market but have not taken steps to supervise or screen distributors or retailers to ensure responsible distribution.

Plaintiffs also allege that defendant *dealers* have "negligently or intentionally acted to create and maintain the illegitimate secondary market" by openly making sales without requiring purchasers to complete the necessary paperwork, failing to conduct mandated background checks before sales, and permitting purchases when the dealer knows or should

---

[as] a juvenile or convicted felon." Plaintiffs claim that many of these straw purchases occur under circumstances where the seller knew or should have known that a straw purchase was taking place.

[2] A "multiple sale" occurs when a qualified buyer purchases several guns at once or over a short period from a licensed dealer with the intention of transferring the guns to people who are not qualified to make the purchases.

[3] "Kitchen table" dealers are federally licensed dealers who do not sell from a retail establishment and then proceed to sell weapons without completing the necessary background checks or complying with reporting requirements.

know that the gun is going to be diverted to the secondary market for illegal activity.

The complaints contain various statistics concerning gun violence throughout Wayne County and the country and the accessibility of guns to youths and felons. Additionally, the complaints cite data from the Bureau of Alcohol, Tobacco, and Firearms (ATF) that traces firearms used in crimes to retail sales that occurred less than three years before the crime, which, according to plaintiffs, is strong evidence that the weapons have been illegally trafficked. Plaintiffs allege that thousands of guns have flowed into the illegal secondary market and that defendants have done nothing to decrease these unlawful sales. Defendants, plaintiffs assert, have failed to ensure that retailers selling their products have adequately secured their premises, causing thousands of guns to reach the unlawful market after having been stolen from licensed dealers, and have failed to make the serial numbers on their products more tamperproof, thereby making it more difficult to track unlawful sales.

All defendants, plaintiffs claim, have made or sold firearms used to commit crimes in either Detroit or Wayne County. Plaintiffs assert that defendants had actual or constructive knowledge that citizens and law enforcement officers would be injured or killed because of their actions and that plaintiffs would suffer economic harm in the form of loss of tax revenue as a result.

In December 1999, defendants filed a motion for summary disposition of plaintiffs' complaints, pursu-

ant to MCR 2.116(C)(8).[4] In addition to challenging the validity of plaintiffs' causes of action, defendants argued that MCL 123.1102, which prohibits local regulation of firearms, bars plaintiffs' actions because litigation constitutes regulation within the meaning of MCL 123.1102. In a written opinion, the trial court granted defendants' motion to dismiss plaintiffs' negligence claims because plaintiffs failed to establish that defendants owed them a legally cognizable duty. Plaintiffs have not appealed the trial court's dismissal of their negligence claims.

The trial court denied defendants' motion regarding plaintiffs' public nuisance claims. The trial court first determined that because plaintiffs alleged that defendants acted willfully, not just negligently, and because the creation of a public nuisance can be intentional, dismissal of plaintiffs' negligence claims was not fatal to plaintiffs' public nuisance claims. The trial court also rejected defendants' argument that public nuisance relates to the use of land, not products, concluding that *private* nuisance is related to the use of land but that public nuisance is not similarly limited. Furthermore, the trial court characterized plaintiffs' claims as allegations of nuisance per accidens, not nuisance per se, and stated that the proper remedy for nuisance per accidens is regulation. Accordingly, the trial court rejected defendants' argument that MCL 123.1102 prohibits plaintiffs' claims. Moreover, the trial court rejected defendants' assertion that

---

[4] Although defendants stated at the beginning of their motion that each count of plaintiffs' complaints was legally infirm, the motion focused on the negligence and public nuisance claims. These counts were also the focus of oral argument, and the trial court's opinion is limited to these issues.

plaintiffs cannot recover the costs of municipal services as damages, and further found that plaintiffs' claims were not so remote that defendants should not be held liable.

After the trial court rendered its opinion, several defendants filed applications for leave to appeal the trial court's decision to this Court. We initially held their applications in abeyance, however, because defendants had filed a second motion for summary disposition, which concerned the applicability of 2000 PA 265, effective June 29, 2000 (now MCL 28.435). Defendants argued in their motion that this newly enacted statute, explicitly retroactive in application, bars plaintiffs' suits. Plaintiffs responded that the statute is unconstitutional because (1) it cannot be applied retroactively without violating due process guarantees; (2) it violates separation of powers principles by imposing a rule of decision on the trial court; and (3) it violates the Title-Object Clause of the Michigan Constitution, Const 1963, art 4, § 24. Defendants, however, contended that plaintiffs, as political subdivisions, do not have standing to raise due process challenges to acts of the Legislature.

After hearing arguments on defendants' second motion for summary disposition, the trial court declared MCL 28.435 unconstitutional. The trial court held that plaintiffs could challenge the statute on due process grounds on the basis of certain exceptions to the "no standing" rule that apply in other jurisdictions, and that, when retroactively applied, the statute violates plaintiffs' due process rights by impairing a vested right. Additionally, the trial court found that the statute violates separation-of-powers principles because the Legislature declared what the status of

the law had been before the enactment of the statute. The trial court did not address plaintiffs' Title-Object Clause challenge.

Defendants subsequently filed applications for leave to appeal the trial court's order denying their second motion. We granted leave to appeal the orders denying both motions for summary disposition.[5] The appeals were consolidated. Because we conclude that MCL 28.435 is constitutional and bars plaintiffs' suits, we reverse and remand for entry of a judgment in favor of the defendants.

### II. STANDARD OF REVIEW

We review de novo the question whether a trial court properly granted summary disposition. *Hinkle v Wayne Co Clerk*, 467 Mich 337, 340; 654 NW2d 315 (2002). Likewise, we review de novo questions of constitutional law, such as those presented by plaintiffs. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

### III. ANALYSIS

MCL 28.435 provides, in relevant part:

---

[5] On appeal, many of the defendants have filed joint pleadings and refer to themselves as "certain manufacturer defendants." Defendant MKS Supply, Inc., has acted individually but has joined the arguments raised on appeal by "certain manufacturer defendants" and has offered some of its own arguments regarding the constitutionality of MCL 28.435. Defendant Alexander's Sport Shop, Inc., although a dealer, also joins in the arguments of certain manufacturer defendants. Throughout this opinion, the term "defendants" refers to all these defendants, who have raised substantially the same arguments. The remaining defendants have not appealed the trial court's decisions.

(9) Subject to subsections (10) to (12), a political subdivision shall not bring a civil action against any person who produces a firearm or ammunition. The authority to bring a civil action under this section is reserved exclusively to the state and can be brought only by the attorney general. The court shall award costs and reasonable attorney fees to each defendant named in a civil action filed in violation of this subsection.

*        *        *

(13) Subsections (9) through (11) are intended only to clarify the current status of the law in this state, are remedial in nature, and, therefore, apply to a civil action pending on the effective date of this act.

Although MCL 28.435 permits political subdivisions to bring an action against producers[6] of firearms or ammunition in certain enumerated circumstances, plaintiffs concede that if MCL 28.435 is valid, it bars the claims asserted in this case.[7] Plaintiffs contest,

---

[6] " 'Produce' means to manufacture, construct, design, formulate, develop standards for, prepare, process, assemble, inspect, test, list, certify, give a warning or instructions regarding, market, sell, advertise, package, label, distribute, or transfer." MCL 28.435(15)(e).

[7] MCL 28.435(10) describes instances in which a political subdivision is permitted to sue a producer of firearms. Permissible actions include actions based on:

(a) A breach of contract, other contract issue, or an action based on a provision of the uniform commercial code . . . in which the political subdivision is the purchaser and owner of the firearm or ammunition.

(b) Expressed or implied warranties arising from the purchase of a firearm or ammunition by the political subdivision or the use of a firearm or ammunition by an employee or agent of the political subdivision.

(c) A product liability, personal injury, or wrongful death action when an employee or agent or property of the political subdivision has been injured or damaged as a result of a defect in the design or manufacture of the firearm or ammunition purchased and owned by the political subdivision. [MCL 28.435(10) (a)-(c).]

however, the constitutional validity of the statute. Plaintiffs argue that the statute violates the separation of powers, Const 1963, art 3, § 2; and the Title-Object Clause, Const 1963, art 4, § 24. Plaintiffs also assert that when applied retroactively, MCL 28.435 violates their due process rights.

"A statute is presumed constitutional, unless its unconstitutionality is readily apparent." *Tolksdorf v Griffith*, 464 Mich 1, 5; 626 NW2d 163 (2001).

> "Every reasonable presumption or intendment must be indulged in favor of the validity of the act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity." [*Council of Orgs & Others for Ed About Parochiaid, Inc v Governor*, 455 Mich 557, 570; 566 NW2d 208 (1997), quoting *Cady v Detroit*, 289 Mich 499, 505; 286 NW 805 (1939).]

"The party challenging the facial constitutionality of an act 'must establish that no set of circumstances exists under which the [a]ct would be valid.'" *Council of Orgs, supra* at 568, quoting *United States v Salerno*, 481 US 739, 745; 107 S Ct 2095; 95 L Ed 2d 697 (1987). Moreover, the "'power to declare a law unconstitutional should be exercised with extreme caution and never where serious doubt exists with regard to the conflict.'" *Schulz v Northville Pub Schools*, 247 Mich App 178, 187; 635 NW2d 508 (2001), quoting *Council of Orgs, supra* at 570. In light of these principles, "[a] party challenging the facial constitutionality of a statute faces an extremely rigorous standard." *Wayne Co Bd of Comm'rs v Wayne Co Airport Auth*, 253 Mich App 144, 161; 658 NW2d 804 (2002), citing *Judicial Attorneys Ass'n v Michigan*, 459 Mich 291, 310; 586 NW2d 894 (1998).

A. DUE PROCESS

For ease of analysis, we will address the last of plaintiffs' constitutional challenges first. In accordance with Michigan law, we find that plaintiffs lack standing to assert that they, as political subdivisions, have been deprived of due process of law. " '[E]xcept as to certain express constitutional grants and limitations of power, local government units are only creatures of legislation' and they do not have standing to challenge the constitutionality of a statutory provision enacted by the Legislature [on equal protection or due process grounds]." *Kent Co Aeronautics Bd v Dep't of State Police*, 239 Mich App 563, 580; 609 NW2d 593 (2000), quoting *DeWitt Twp v Clinton Co*, 113 Mich App 709, 716; 319 NW2d 2 (1982). This principle is not affected by a political subdivision's statutory power to sue and be sued. *East Jackson Pub Schools v Michigan*, 133 Mich App 132, 139 n 11; 348 NW2d 303 (1984).

Although the holding in *DeWitt* is prefaced by a recognition that exceptions to the general rule exist, *Kent Co, supra* at 580, we find that none of the exceptions plaintiffs have proffered apply here. First, plaintiffs claim that when a state is not a party to the case, the justification for imposing the prohibition on a constitutional challenge is weakest, and courts have been hesitant to restrict constitutional challenges when only private parties and political subdivisions are parties to the suit. We note that this claimed exception does not appear to be a constitutional grant or limitation of power, *id.*, and that plaintiffs failed to provide supporting authority for this exception. Because it is not this Court's responsibility to

locate authority supporting a party's position on appeal, we refuse to adopt this exception. *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 316 n 8; 660 NW2d 351 (2003), citing *Staff v Johnson*, 242 Mich App 521, 529; 619 NW2d 57 (2000).

Next, plaintiffs claim that it is unfair to allow defendants to raise the statute as a bar to plaintiffs' suit, yet prohibit plaintiffs from defending against the statute's application. Even though this "defensive posture" exception also is not an express constitutional grant or limitation of power, the trial court endorsed this exception and permitted plaintiffs to assert their due process challenge, resting its ruling on *Fuchs v Robbins*, 738 So 2d 338 (Fla App, 1999). We reject this exception for several reasons. First, Florida law is not binding on this Court. Second, *Fuchs* has since been reversed by the Supreme Court of Florida because a Florida statute specifically prohibited the constitutional challenge at issue in that case. *Fuchs v Robbins*, 818 So 2d 460, 463, 464 (Fla, 2002). Third, *Fuchs* does not stand for the proposition that plaintiffs have standing to raise a constitutional challenge when the challenge is made after an opposing party asserts the validity of a statute. Rather, the holding in *Fuchs* was based on the notion that a state agency or public officer does not have a sufficiently substantial interest or special injury to voice a constitutional challenge, but may do so if the constitutional challenge is raised from a defensive posture. *Fuchs*, 738 So 2d 340, citing *Dep't of Ed v Lewis*, 416 So 2d 455, 458 (Fla, 1982). We also note that the procedural posture of the challenge does not change the fact that a political subdivision is a creature of statute, subject to the will of its creator.

Fourth, as defendants note, in at least two Michigan cases where a political subdivision raised a constitutional challenge from a defensive posture, this Court declined to address this question while concluding that the political subdivision did not have standing to bring the action. *Goodridge v Ypsilanti Twp Bd*, 209 Mich App 344; 529 NW2d 665 (1995), rev'd on other grounds 451 Mich 446; 547 NW2d 668 (1996); *Weber v Orion Twp Bldg Inspector*, 149 Mich App 660; 386 NW2d 635 (1986). For all the above reasons, we decline to adopt this exception.

Plaintiffs next argue that a political subdivision has standing to challenge legislation when the issue is one of great public concern. No Michigan appellate court has acknowledged this exception, and, although the trial court was unwilling to rest its decision on this exception alone, it nevertheless found that plaintiffs had standing on this basis. We disagree. Most of the cases applying the great public concern exception do so on the basis that the public official or political subdivision involved joined a private litigant to collectively challenge the statute, and that the public official or political subdivision had a significant stake in the outcome of the proceedings. See, e.g., *Minnesota State Bd of Health v Brainerd*, 308 Minn 24, 29-31; 241 NW2d 624 (1976); *Fulton Foundation v Wisconsin Dep't of Taxation*, 13 Wis 2d 1, 13; 108 NW2d 312 (1961). Assuming that plaintiffs have established the existence of a great public concern in the matters asserted in this litigation, Michigan law nevertheless provides that a political subdivision has only those rights granted to it by the Legislature. Because the Legislature has not conferred standing here, we do not adopt this exception.

Plaintiffs also argue that a political subdivision has standing to assert due process claims when it has a sufficient interest in the outcome of the litigation. The cases relied on by plaintiffs are inapplicable here. In both *Saginaw Co v Buena Vista School Dist*, 196 Mich App 363, 366; 493 NW2d 437 (1992), and *Waterford School Dist v State Bd of Ed*, 98 Mich App 658, 667; 296 NW2d 328 (1980), the plaintiffs filed suit against the defendants for allegedly violating the Headlee Amendment to the Michigan Constitution, Const 1963, art 9, §§ 25-34, and this Court found that the plaintiffs had standing. In neither of these cases, however, did the plaintiff challenge the constitutionality of a statute. As this Court stated in *East Jackson Pub Schools, supra* at 138-139,

> *Waterford* involved an action by the school district to enforce payment of funds mandated by the Headlee Amendment, thus seeking to protect specific rights accorded the district. As such, standing to sue was clear. In the instant case, however, plaintiff districts do not seek to enforce rights conferred upon them . . . .
>
> . . . Except as provided by the state, they have no existence, no functions, no rights and no powers. They are given no power, nor can any be implied, to defy their creator over the terms of their existence.

This "exception" is also inapplicable, and we therefore conclude that plaintiffs lack standing to contest the validity of MCL 28.435 on due process grounds.

### B. SEPARATION OF POWERS

Plaintiffs next claim that by enacting MCL 28.435, the Legislature overstepped the constitutional boundaries of its power and infringed on the role of the

courts, thereby violating separation of powers princi-ples.[8] Michigan's Constitution provides:

> The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution. [Const 1963, art 3, § 2.]

As the Michigan Supreme Court noted in *Quinton v Gen Motors Corp*, 453 Mich 63; 551 NW2d 677 (1996), " '[t]he source and contours of th[e] separation-of-powers limitation are somewhat murky . . . .' " *Id.* at 76, quoting Redish, Federal judicial independence: Constitutional and political prospectives, 46 Mercer L R 697, 713 (1995). Furthermore, the "doctrine of separation of powers . . . is a structural safeguard, a prophylactic device, rather than an immutable princi-ple . . . ." *Quinton, supra* at 89, citing *Plaut v Spend-thrift Farm, Inc*, 514 US 211; 115 S Ct 1447; 131 L Ed 2d 328 (1995).

Plaintiffs argue that by stating in MCL 28.435(13) that the pertinent portions of MCL 28.435 "are intended only to clarify the current status of the law," the Legislature has intruded on the exclusive author-ity of the judicial branch to interpret the law. Plain-tiffs also assert that the legislative clarification of the statute improperly overturns the trial court's ruling

---

[8] Defendants do not contest plaintiffs' standing to assert that the Legis-lature violated separation-of-powers principles. We also note that although *Kent Co* stated broadly that political subdivisions lack standing to assert constitutional challenges, it is clear from the discussion in *Kent Co* and the authority underlying its analysis, i.e., *DeWitt*, that the discussion in *Kent Co* was limited to a political subdivision's standing to assert due pro-cess and equal protection challenges.

that this action is not prohibited by MCL 123.1102. We disagree.

At its core, plaintiffs' separation-of-powers challenge hinges on the fact that the enactment of MCL 28.435(9)-(13) effectively overrides the trial court's finding that plaintiffs are not prohibited by MCL 123.1102 from bringing this action. Plaintiffs vigorously assert that this statutory enactment "overturns a judicial decision" or, alternatively, "seeks to compel a judicial decision in favor of defendants." We find plaintiffs' arguments to be misplaced.

First, we note that the trial court's ruling regarding MCL 123.1102 did not constitute a final judgment because it did not dispose of all claims and adjudicate all the rights and liabilities of the parties. MCR 7.202(7)(a)(i); *Allied Electric Supply Co, Inc v Tenaglia*, 461 Mich 285, 288; 602 NW2d 572 (1999). Because the trial court's order was not a final judgment that the statute required to be reopened, the order was subject to revision by the Legislature:

> Congress can always revise the judgments of Article III courts in one sense: When a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly. See *United States v. Schooner Peggy*, 5 U.S. 103, 1 Cranch 103, 2 L. Ed. 49 (1801); *Landgraf v. USI Film Products*, 511 U.S. 244, 273-280, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994). . . . [A] distinction between judgments from which all appeals have been foregone or completed, and judgments that remain on appeal (or subject to being appealed), is implicit in what Article III creates: not a batch of unconnected courts, but a judicial *department* composed of "inferior Courts" and "one supreme Court." Within that hierarchy, the decision of an inferior court is not (unless the time for appeal has expired) the final word of the

department as a whole. It is the obligation of the last court in the hierarchy that rules on the case to give effect to Congress's latest enactment, even when that has the effect of overturning the judgment of an inferior court, since each court, at every level, must "decide according to existing laws." *Schooner Peggy, supra,* at 109. [*Plaut, supra* at 226-227.]

We therefore conclude, consistent with the principles articulated in *Plaut,* that plaintiffs cannot show that the enactment of MCL 28.435 violates the Michigan Constitution simply because it was enacted after the trial court ruled on the applicability of MCL 123.1102.

Second, we disagree with plaintiffs' assertion that because the Legislature intended MCL 28.435 to *clarify* rather than *change* the law, the statute violates separation-of-powers principles. The statute at issue does not directly interfere with judicial decision making because it does not direct the judiciary either to make specific findings of fact or to apply relevant facts to the law in a particular way. *Hyundai Merchant Marine Co, Ltd v United States,* 888 F Supp 543, 549 (SD NY, 1995). Rather, MCL 28.435 "specifies the law to be applied to the relevant cases and leaves to the courts the job of applying that law to the particular facts before them."[9] *Hyundai, supra* at 549.

Third, we think it worthy of mention that MCL 28.435 was introduced in the Legislature as House Bill 5781 on May 11, 2000, five days *before* the trial court rendered its decision permitting plaintiffs to proceed

---

[9] In this regard, we observe (as did the court in *Hyundai, supra* at 549 n 6) that because the Legislature is authorized to revise laws, if MCL 28.435 changed the law, plaintiffs' separation-of-powers argument is not feasible, and if the statute merely clarified the law, plaintiffs never had a viable claim.

under MCL 123.1102. As introduced, the bill stated its intention to clarify the existing law, its remedial nature, and, thus, its retroactivity and application to pending civil actions. Factually, therefore, plaintiff's contention that MCL 28.435 is intended only to respond to the *rulings* of the trial court is not supported. We are not inclined to ascribe to the Legislature a prescience or omniscience concerning the trial court's pending ruling.

For all of the reasons we have articulated, we conclude that MCL 28.435 does not violate the separation-of-powers principles found in the Michigan Constitution.

### C. TITLE-OBJECT CLAUSE

The Title-Object Clause provides that "[n]o law shall embrace more than one object, which shall be expressed in its title." Const 1963, art 4, § 24. Plaintiffs argue that 2000 PA 265 violates this constitutional provision because it embraces more than one object and its title inadequately expresses the contents of the law. We disagree. Our Supreme Court recently summarized the law generally applicable to a Title-Object Clause analysis. In *Pohutski v City of Allen Park*, 465 Mich 675, 691-692; 641 NW2d 219 (2002), the Court stated:

> This constitutional provision requires that (1) a law must not embrace more than one object, and (2) the object of the law must be expressed in its title. . . . This constitutional limitation ensures that legislators and the public receive proper notice of legislative content and prevents deceit and subterfuge. . . . The goal of the clause is notice, not restriction of legislation.

The "object" of a law is defined as its general purpose or aim. . . . The "one object" provision must be construed reasonably, not in so narrow or technical a manner that the legislative intent is frustrated. . . . We should not invalidate legislation simply because it contains more than one means of attaining its primary object; "[h]owever, if the act contains 'subjects diverse in their nature, and having no necessary connection,'" it violates the Title-Object Clause. . . . The act may include all matters germane to its object, as well as all provisions that directly relate to, carry out, and implement the principal object. . . . The statute "may . authorize the doing of all things which are in furtherance of the general purpose of the Act without violating the 'one object' limitation of art 4, § 24." . . . Finally, the constitutional requirement is not that the title refer to every detail of the act; rather, "[i]t is sufficient that 'the act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose . . . .'"

First, plaintiffs assert a violation of the Title-Object Clause on the basis that subsections 1 through 8 of MCL 28.435, requiring trigger locks or similar devices and warnings about safe storage, are in stark contrast to subsections 9 through 13, setting the limits of civil suits that may be maintained by a political subdivision against a producer of firearms or ammunition.[10] According to plaintiffs, no logical connection exists between these two sections of the statute. Moreover, plaintiffs assert, the incongruity of these two sets of sections is further shown by the fact that the law MCL 28.435 purportedly clarifies, MCL 123.1102, is found in a completely different chapter of the Michigan Compiled Laws.

---

[10] See n 6.

We agree with defendants that plaintiffs read the term "object" too narrowly. In *People v Kevorkian,* 447 Mich 436, 456-457; 527 NW2d 714 (1994), the Court reviewed prior cases addressing the Title-Object Clause and ultimately rejected a challenge to a law that both formed the Commission on Death and Dying and established criminal penalties for assisted suicide. *Id.* at 458-459. The Court categorized the legislation under its consideration with legislation that meets the requirements of the Title-Object Clause, such as that considered in *Kull v State Apple Comm,* 296 Mich 262; 296 NW 250 (1941), where the subject act "contained provisions ranging from promoting the consumption and sale of apples to taxing apple production, creating an apple commission, and providing penalties. While the act addressed four seemingly diverse matters, it was proper to join them because all related to the regulation of the apple industry." *Kevorkian, supra* at 456 n 20.

Likewise, in the instant case, the act's provisions each relate to firearms regulation. Although subsections 9 through 13 provide immunity from civil liability in certain instances, this immunity extends to situations discussed in the act, namely providing trigger locks and firearm safety information. While the specific causes of action are prohibited, so are suits based on a failure to comply with the other provisions of the act, as is demonstrated by the plain language of subsection 9, which states that "[t]he authority to bring a civil action *under this section* is reserved exclusively to the state and can be brought only by the attorney general." MCL 28.435(9) (emphasis added). Additionally, delineating the entity with the authority to enforce this section is clearly a mat-

ter germane to its implementation. *Pohutski, supra* at 691. We cannot say that the various sections of this act are so diverse in nature and so devoid of necessary connection that the act should be invalidated. *Id.*

Plaintiffs also argue that the object of MCL 28.435 is not adequately reflected in its title. Again, we disagree. When the Legislature enacted 2000 PA 265, it amended 1927 PA 372, which, as amended by 1990 PA 320, was titled as follows:

> An act to regulate and license the selling, purchasing, possessing, and carrying of certain firearms and gas ejecting devices; to prohibit the buying, selling, or carrying of certain firearms and gas ejecting devices without a license; to provide for the forfeiture of firearms possessed in violation of this act; to provide immunity from civil liability under certain circumstances; to prescribe the powers and duties of certain state and local agencies; and to repeal all acts and parts of acts inconsistent with the provisions of this act.

As amended, the title of 2000 PA 265 states:

> An act to regulate and license the selling, purchasing, possessing, and carrying of certain firearms and gas ejecting devices; to prohibit the buying, selling, or carrying of certain firearms and gas ejecting devices without a license; to provide for the forfeiture of firearms possessed in violation of this act; *to provide for penalties and remedies for violations of this act*; to provide immunity from civil liability under certain circumstances; to prescribe the powers and duties of certain state and local agencies; and to repeal all acts and parts of acts inconsistent with the provisions of this act. [Emphasis added.]

Plaintiffs argue that the provisions concerning civil immunity in certain circumstances and the powers and duties of certain state and local agencies were

added to the title by 1990 PA 320 and refer to specific language in that act. Regardless, these provisions of the title adequately put the public on notice that in certain circumstances related to "selling, purchasing, possessing, and carrying of certain firearms," civil immunity is granted by the act. Were we to take plaintiffs' argument to its logical conclusion, the Legislature would be required to detail in the title each instance of civil immunity granted by the act. However, " 'the title of an act need not be an index to all the provisions of the act.' " The test is " 'whether the title gives fair notice to the legislators and the public of the challenged provision.' " *People v Cynar*, 252 Mich App 82, 84-85; 651 NW2d 136 (2002), quoting *HJ Tucker & Assoc, Inc v Allied Chucker & Engineering Co*, 234 Mich App 550, 559; 595 NW2d 176 (1999). The legislation at issue passes that test.

### IV. CONCLUSION

Because we find that plaintiffs' have not raised a sustainable challenge to the constitutionality of MCL 28.435, plaintiffs' actions against defendants are barred and we need not address the trial court's remaining rulings.

Reversed and remanded for entry of judgment in favor of defendants. We do not retain jurisdiction.